(No. 56229.—

TIMOTHY ROBERTS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Shappert Engineering Company, Appellee).

*Opinion filed January 24, 1983.*

Warren D. Danz, P.C., of Peoria, for appellant.

Andrew Maral, of Burgeson, Laughlin, Cunningham & Hare, of Chicago, for appellee.

JUSTICE MORAN delivered the opinion of the court: Claimant, Timothy Roberts, sought workmen's com-

pensation as the result of an alleged injury he sustained while in the employ of the respondent, Shappert Engineering Company. An arbitrator found that claimant "failed to prove that he sustained accidental injuries arising out of and in the course of his employment" and therefore denied compensation. On review, the Industrial Commission, although it "reversed" the decision of the arbitrator, nevertheless denied the claimant compensation because he "failed to prove any causal connection between his present complaints of ill-being and the *** accident." The circuit court of Macon County confirmed the decision of the Commission, and claimant brought a direct appeal to this court. 73 Ill. 2d R. 302(a).

The sole issue presented is whether the Commission's finding that claimant's condition is not causally related to the alleged accident is against the manifest weight of the evidence.

The claimant was the only witness to testify at the hearing before the arbitrator. He stated that, on June 21, 1978, he was employed by respondent as a laborer. On that date, while working underneath a bridge, the ladder upon which claimant was standing slipped, and he fell. He stated that he experienced a sharp pain in his lower back, although he continued to work the rest of the day.

The following day, claimant went to St. Mary's Hospital, where his back was X-rayed. He was informed that he had a pulled muscle, and pain medication was prescribed for him. Claimant continued to work through August, at which point his job was completed. He testified that the pain in his back increased during this time, but he did not see a doctor. In November, he obtained another job as a laborer, for two weeks, with a construction company. He was then laid off throughout the winter.

In January or February of 1979, claimant's back pain radiated into his left leg, and he could not walk. On March 2, 1979, he consulted Dr. Sterling Parker, an orthopedic

surgeon. Dr. Parker admitted him to St. Mary's Hospital and administered a myelogram test (a radiograph of the spinal canal). Surgery was subsequently performed on claimant's lower back.

Dr. Parker allowed claimant to return to work on May 11, 1979. He obtained employment operating a jackhammer for approximately one week. He testified that he continued to experience pain but nevertheless worked until he was laid off. He is not presently receiving medical treatment.

Finally, claimant testified that, prior to June of 1978, he had not injured his back or lower legs "in any way that [he could] remember." He stated that he had experienced "a couple pains" in his back before that date, but nothing of a serious nature. He also indicated that he had not sustained any injuries to his back or legs subsequent to June 21, 1978.

On cross-examination, claimant admitted that since his visit to the hospital the day following the alleged accident, he sought no further medical attention for nine months. He also stated that he did not remember seeing Dr. Parker in 1970 for back pain, or being told at that time he suffered from a herniated disc. He initially stated that he never told the doctor he hurt his back after being "thrown" by a horse. Later, however, he testified that he did recall this incident. He also stated that he did not remember seeing Dr. Parker in 1974, and receiving back X rays. He did recall experiencing "a little bitty pain in [his] back," that year, after he moved a shed.

On the basis of this evidence, the arbitrator denied the claim for compensation. At the subsequent hearing before the Commission, claimant introduced into evidence the depositions of his two physicians. Dr. Parker stated that he saw claimant in June of 1970. He had been "thrown by a horse" in April or May of that year and complained of pain in his back and left leg. Dr. Parker stated that at that

time, he thought claimant suffered from an "L-4 disc attack" (a spinal condition located at the fourth vertebra in the lower part of the back). He prescribed a back support for claimant to wear. He saw claimant again in 1971, at which time claimant was unable to lift heavy objects without suffering from pain in his back and left hip.

Dr. Parker also stated that claimant again consulted him in 1974, complaining of low back pain. An X ray showed minimal degenerative changes at L-4. He next saw claimant in 1979. His condition at that time was suggestive of a herniated disc at L-5. The doctor performed an operation and removed the disc. When asked whether there was a causal connection between the alleged injury and claimant's current condition, Dr. Parker responded: "[T]he disc abnormality, it might or could have been aggravated by the injury ***. I do not think that it produced the complete disc rupture that he was operated on for, which according to my history occurred about two weeks prior to the time I saw him."

On cross-examination, Dr. Parker indicated that the pain claimant suffered on June 21, 1978, could have been due to a pulled muscle. He stated that he "really [had] no basis to make the opinion" except his knowledge of claimant's history.

Also deposed by claimant was Dr. Gordon Schultz, an orthopedic surgeon. He testified that he saw claimant in January of 1980, and reviewed his X rays. According to Dr. Schultz, claimant "had a little beyond the usual disability that someone has after a laminectomy." He stated there was a problem with the nerve root at L-4 or L-5, which could account for claimant's problem. When asked whether there was a causal relationship between the alleged accident and claimant's current condition, Dr. Schultz responded:

"Well, I have in mind that he had had back trouble previously, and then there were some degenerative changes seen in '74 which were very minor, but he didn't have any

significant leg trouble until he did have this accident of June 21, 1978, and I think that ruptured his disc, but the disc didn't get over against a nerve root until later, and that is what drove him to the doctor. It finally moved over against a nerve root which caused the pain down his leg, and which caused the doctor to operate."

On cross-examination, Dr. Schultz testified that any number of daily activities could cause a disc to move against a nerve root. He stated that "50% of the discs don't have a traumatic origin."

Claimant contends that he suffered an accidental injury which aggravated a preexisting condition. It is therefore argued that the injury contributed to his current condition and is sufficient to support an award. (*E.g., Goldblatt Brothers, Inc. v. Industrial Com.* (1981), 85 Ill. 2d 172, 177.) He further claims that he failed to consult a physician for nine months following the accident because he "is a very stoic individual."

Respondent asserts that there is no causal connection between the alleged incident of June 21, 1978, and claimant's present condition of ill-being. It is argued that claimant's prior non-work-related injuries are responsible for his degenerative back condition. Further, respondent points out that claimant failed to seek medical attention for nine months following the alleged incident. He also evaded questions regarding his prior medical history. For these reasons, the Commission was justified in finding that claimant lacked credibility.

"The question of whether a claimant's disability is attributable to a degenerative condition or to an aggravation of a preexisting condition because of an accident is a question of fact to be decided by the Industrial Commission." (*Ross v. Industrial Com.* (1980), 79 Ill. 2d 258, 261, citing *International Vermiculite Co. v. Industrial Com.* (1979), 77 Ill. 2d 1.) Similarly, it is for the Commission to determine matters of credibility. (*General Electric Co. v. Industrial Com.* (1982), 89 Ill. 2d 432.) This court may not set aside the Com-

mission's decision even though we may draw different inferences from the record. (*Long v. Industrial Com.* (1979), 76 Ill. 2d 561.) The Commission's decision will be reversed only where it is contrary to the manifest weight of the evidence. *E.g., Millis v. Industrial Com.* (1982), 89 Ill. 2d 444.

As previously noted, claimant has a history of back and leg difficulties dating from 1970. On one occasion, he was required to wear a back brace. His condition was diagnosed as a "disc attack," or a herniated disc, which was also the reason prompting his surgery. The day after the incident in June of 1978, claimant visited a hospital and was informed he suffered from a pulled muscle. Dr. Parker agreed that claimant may have incurred only a pulled muscle at the time. He further indicated that the disc rupture requiring surgery probably occurred in February of 1979, two weeks prior to the operation.

The record also reveals that, except for the day following the alleged incident, claimant sought no further medical treatment for nine months. He missed no days of work, during these months, as a result of the incident. Indeed, he continued to perform heavy, manual labor.

It is possible, as claimant and Dr. Schultz assert, that claimant was a "stoic" individual and suffered from a "delayed reaction" to the incident. However, the Commission would also be justified in inferring that his back condition was simply not related to the alleged accident. Rather, it could be found that claimant suffered from a degenerative condition which extended over a period of eight years and culminated in his current disability.

Finally, our review of the record indicates that claimant was extremely evasive concerning his prior medical history. He failed to recall his visits to Dr. Parker, the reason for the visits, and any diagnosis or treatment. The Commission may well have considered claimant's credibility in assessing the validity of his claim.

For the above-related reasons, we are not prepared to

say that the Commission's decision was contrary to the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Macon County is affirmed.

*Judgment affirmed.*