SHARON A. ENGLISH, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (K mart Stores, Appellant).

Fifth District (Industrial Commission Division)   No. 5—85—0771WC

Opinion filed December 30, 1986.

James M. Gallen, of St. Louis, Missouri, for appellant.

G. Richard Jones, of Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The petitioner, Sharon A. English, filed a petition under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 et seq.) to recover benefits for disability. The arbitrator awarded to the petitioner permanent partial disability and temporary total disability. On review, the Industrial Commission reduced both disability awards. On appeal, the circuit court of St. Clair County reversed the decision of the Commission as to the permanent disability award and reinstated the arbitrator's award. From that judgment, the respondent brings this appeal.

On April 6, 1982, in a hearing before an arbitrator, the following evidence was established. The petitioner testified that on April 5, 1978, when she was 20 years old, she injured her lower back while working for her employer, the respondent, K mart Stores. She was pushing a heavy cart filled with merchandise when she felt a pop in her back. The petitioner was taken to the hospital where she was X-rayed and given pain medication. The petitioner stated that she had never had back problems before this accident. At the time of the arbitrator's hearing, the petitioner had not returned to work.

The petitioner testified that her family doctor first treated her for her injury, using physical therapy from April through November of 1978. She was subsequently treated by Dr. John Hipskind and Dr. Robert Schultz. The respondent also had the petitioner examined on numerous occasions by Dr. George Sertl.

Dr. Hipskind testified by deposition taken on February 17, 1982. At his first examination of the petitioner on February 14, 1979, Dr. Hipskind diagnosed the petitioner as having lumbosacral strain. The doctor prescribed exercises, a muscle relaxant known as Flexoril, an

anti-inflammatory drug, and a lumbosacral corset.

Because there had been no significant change in her condition, on June 5, 1979, Dr. Hipskind had the petitioner hospitalized. At that time, Dr. Hipskind consulted with Dr. Schultz. A series of X rays revealed that the petitioner suffered from a grade 1 spondylolisthesis of the spine. Dr. Hipskind opined that this condition arose as a result of the petitioner's April 5, 1978, accident and was the cause of her pain. The doctor recommended continuing with the same conservative treatment, including exercises, analgesics, and the wearing of the corset. Dr. Hipskind further recommended that the petitioner avoid stooping, bending, or lifting. He believed that to act beyond these restrictions could cause further slippage, aggravating the petitioner's already vulnerable condition. Dr. Hipskind's long-term prognosis was that the petitioner would continue to require conservative treatment. If her condition worsened, the petitioner might require a spinal fusion of the vertebrae to prevent further slippage. However, Dr. Hipskind stated that the petitioner's condition had remained fairly constant since the first time he examined her. Further, on cross-examination the doctor stated that he believed that the petitioner was employable within the restrictions he placed on her.

Dr. Schultz, a neurosurgeon, testified by deposition on February 24, 1982. Following an examination of the petitioner on June 5, 1979, Dr. Schultz diagnosed her condition as grade 1 spondylolisthesis, which he explained was a condition where one vertebra had moved forward over another one, in this case, between the last lumbar vertebra and the first vertebra of the sacrum. Dr. Schultz further explained that grade 1 is the mildest form of spondylolisthesis, while grade 4 is the most serious. It was Dr. Schultz' opinion that the April 5, 1978, accident was the cause of her condition. He further opined that the spondylolisthesis is a permanent condition subject to an increase in its severity. Dr. Schultz stated his belief that the petitioner would always have pain in her lower back. Although he did not expect that a spinal fusion was necessary in light of the petitioner's then-present condition, Dr. Schultz stated that a fusion might be required in the future if there were further deterioration in the petitioner's condition. Dr. Schultz recommended that the petitioner never again bend over at the waist or lift more than 50 pounds. In Dr. Schultz' opinion, the petitioner would require intermittent use of a lumbosacral support for the rest of her life.

At the request of the respondent, orthopedic surgeon Dr. George Sertl examined the petitioner on a number of occasions from September 12, 1978, through October 22, 1981. The doctor diagnosed her as suffering from grade 1 spondylolisthesis. Dr. Sertl recommended that

the petitioner was capable of light work, but advised her against lifting more than 20 to 25 pounds and repeated bending or stooping. As of his last examination in October of 1981, Dr. Sertl found no further aggravation in the petitioner's condition.

On March 10, 1981, on the basis of Dr. Sertl's recommendation, the respondent offered the petitioner a job as a customer greeter. That job entailed no activities beyond Dr. Sertl's restrictions and only a minimum of bending. On March 16, 1981, the petitioner refused the position because she believed that the respondent would require her to stand throughout the work day, which would be too painful for her. While a chair apparently had never previously been provided for a customer greeter, the petitioner never asked the respondent whether she could have a chair to sit on when she was not busy.

From the foregoing, on May 18, 1982, the arbitrator awarded the petitioner 25% permanent partial disability under section 8(d)(2) of the Act, 208⁵/₇ weeks temporary total disability under section 8(b) of the Act, and $301.70 for necessary medical expenses under section 8(a) of the Act. (Ill. Rev. Stat. 1981, ch. 48, pars. 138.8(d)(2), 138.8(b), 138.8(a).) Following oral arguments on the respondent's review before the Industrial Commission, on February 23, 1984, the Commission reduced the permanent disability award to 9% and reduced the temporary disability award to 153⁴/₇ weeks, but affirmed the award for necessary medical expenses. On November 1, 1985, the circuit court reversed the decision of the Commission as to the award for permanent partial disability. The court reinstated the arbitrator's award of 25% permanent partial disability. The court confirmed the remainder of the Commission's decision. This appeal followed.

The respondent's sole issue on appeal is whether the circuit court erred in reversing the decision of the Industrial Commission as to the 9% permanent partial disability award and in reinstating the arbitrator's award of 25% permanent partial disability. The respondent argues that the circuit court erred because the Commission's 9% permanent disability award was not against the manifest weight of the evidence. The petitioner argues that the Commission's decision was contrary to the manifest weight of the evidence. Specifically, the petitioner argues that the circuit court, unlike the Commission, considered all of the medical evidence concerning the degree of her permanent disability.

■■ It is presumed that the Industrial Commission considers competent and proper evidence in reaching its decision. (*Glover v. Industrial Com.* (1985), 140 Ill. App. 3d 361, 485 N.E.2d 605.) Determining the nature and extent of an injury is primarily the responsibility of the Industrial Commission (*Wallace v. Industrial Com.* (1983), 98 Ill. 2d 33,

455 N.E.2d 92), and the Commission is not bound by the findings of the arbitrator (*Berry v. Industrial Com.* (1984), 99 Ill. 2d 401, 459 N.E.2d 963). Because of the Commission's expertise in the area of workers' compensation, its finding on the question of disability should be given substantial deference. (*Board of Education v. Industrial Com.* (1983), 96 Ill. 2d 239, 449 N.E.2d 839.) It is for the Commission to resolve disputes in the evidence and to draw reasonable inferences and conclusions from that evidence, and the Commission's decision may not be set aside on review unless it is contrary to the manifest weight of the evidence. *Glover v. Industrial Com.* (1985), 140 Ill. App. 3d 361, 485 N.E.2d 605.

In reversing the Commission's award for permanent partial disability, the circuit court found of great significance the fact that the petitioner's condition was permanent and subject to further deterioration which could necessitate a spinal fusion. In support of its decision, the court relied on a number of unnamed Commission decisions involving back injuries where, following back surgery, the conditions of the various petitioners were not significantly different than the condition of the petitioner here. The circuit court noted that in those decisions the Commission typically awarded 20% to 30% permanent partial disability under section 8(d)(2) of the Act.

The reasoning of the circuit court is flawed in two respects. First, a reviewing court must presume that the Commission considered all of the evidence, including evidence of the permanency of the petitioner's condition and the possibility of future back surgery. The failure of the Commission to explicitly set forth these factors in its decision should not serve to rebut the presumption. Second, the three testifying doctors stated that the petitioner's condition was not sufficiently serious at present to warrant back surgery. The doctors testified that the petitioner might never require back surgery. Consequently, the circuit court improperly relied upon comparison of the petitioner's condition to petitioners whose conditions had necessitated surgery.

■ We find that the decision of the Industrial Commission was not contrary to the manifest weight of the evidence. Accordingly, we reverse the judgment of the circuit court as to the 25% award for permanent partial disability and reinstate the Commission's award of 9% permanent partial disability.

Judgment reversed and award reinstated.

McNAMARA, WOODWARD, McCULLOUGH, and KASSERMAN, JJ., concur.