RELIANCE ELEVATOR COMPANY, Appellant, v. THE INDUSTRIAL
COMMISSION *et al.* (Boghos Torian, Appellee).

First District (Industrial Commission Division)   No. 1—87—1783WC

Opinion filed May 18, 1988.

Goldberg, Fohrman & Weisman, Ltd., of Chicago, for appellant.

Terrence J. Van Driska, of Chicago (Perz & McGuire, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Claimant Boghos Torian sought worker's compensation benefits following an alleged accidental back injury sustained while working for Reliance Elevator Company. An arbitrator awarded no benefits. The Industrial Commission reversed that decision and awarded $202.67 per week for 276 weeks as temporary total disability, plus medical expenses. The circuit court of Cook County confirmed the Commission's decision.

Reliance appeals, contending that the Commission violated its right to due process of law when it allowed claimant to amend the date of the accident and when it permitted counsel for claimant's former employer, who is not a party to this appeal, to participate in the deposition of Reliance's medical expert. Reliance contends further that it was against the manifest weight of the evidence to find an accident occurred on December 30, 1978; to find the injury arose out of and in the course of employment; to find a causal connection; and to find claimant gave notice of the alleged accident.

On April 13, 1978, claimant worked as a machinist for Crane Packing Company when he fell off a table and injured his back. He was released for work on June 26, 1978, by his treating physician, Dr. Edward Feil. Claimant then worked for A & B Machine Works until August 24, 1978, with no incidents involving his back. He received no medical care and missed no work during this period. On August 25, 1978, claimant began working for Reliance. During December 1978, claimant's duties periodically included working with "babbitt," which is like molten metal melted and carried in half-filled cast-iron pots. The pots weighed 40 pounds when empty, and 100 pounds when half filled. They were usually moved with a crane. However, claimant was sometimes required to help another worker carry the babbitt a distance of four or five feet when the crane would not reach.

During December 1978, claimant began experiencing pain in his back. On Saturday December 30, 1978, he was unable to stand up straight. Claimant has not worked since that time.

On December 30, 1978, claimant saw Dr. Feil, who admitted him

to the hospital on Tuesday, January 2, 1979, with a diagnosis of lumbar disc syndrome. The hospital discharge summary indicates claimant injured his back at work. During the period of 1979 through 1984, claimant had back surgery several times.

Dr. Feil testified for claimant that by June 1978 claimant had fully recovered from the lumbar disc protrusion caused by the April 1978 accident. He was completely asymptomatic. Dr. Feil did not see claimant again until December 30, 1978, when claimant reported experiencing severe low back pain. Dr. Feil testified that lifting usually aggravates lumbar disc protrusion. While the condition could have reoccurred even absent any lifting, there was "a greater chance of injuring his back if he is doing heavy lifting. The probabilities of having a reoccurrence are greater if he is doing heavy lifting versus spontaneously reoccurring."

Dr. Michael Schafer, an orthopedist, testified for claimant that he began treating him in September 1981. He opined that with no symptoms between June and December 1978, the lifting of heavy metal pots was the most likely cause of the present low back condition. If the April 1978 accident did result in a herniated disc, the December 1978 lifting aggravated that condition.

Dr. Donald Miller testified that he found no direct connection between the April 1978 fall and the present condition. The probable cause of this condition is the continuous lifting of the molten metal pots.

Andy Gumushian testified for claimant that he was an assistant foreman for Reliance. He was also claimant's nephew. Gumushian helped claimant, who spoke very little English, in filling out the job application. Gumushian testified that in mid-December 1978 claimant began commenting to his boss, Carl, that the back pain he experienced in April 1978 at Crane had returned. Gumushian had observed claimant lifting babbitt. A few days before January 2, 1979, claimant told Gumushian his back was getting worse.

Claimant testified that he also told Max Dengler, a supervisor for Reliance, on January 2, 1979, that he was being hospitalized for back pain. He specified that the pain had returned while working for Reliance.

Dengler testified for Reliance that claimant told him on January 2, 1979, that he was being hospitalized. Dengler knew of claimant's back problem, but thought it resulted from the Crane employment.

■ Reliance first contends that it was denied due process of law when the Commission permitted claimant to change the accident date from January 2, 1979, to December 30, 1978. The Commission found

that although claimant last worked on January 2, 1979, the " 'ultimate breakdown of his bodily structure' occurred on December 30, 1978 when he was incapable of straightening up after lifting buckets of molten metal." Relying upon the testimony of claimant and Gumushian, the Commission found that as the result of the repetitive lifting claimant sustained accidental injuries arising out of and in the course of his employment on December 30, 1978.

Reliance argues that the granting of the motion to amend denied it the "opportunity to meet the change" either by cross-examining claimant's witnesses or presenting its own witnesses relative to the change. Moreover, Reliance was prejudiced in view of Gumushian's testimony that claimant lifted no babbitt several days before January 2, 1979. Reliance concludes that it "was denied any hearing on the issue of whether [claimant] sustained an accidental injury arising out of and in the course of his employment on December 30, 1978."

The amendment merely changed the pleadings to conform to the evidence already in the record and did not require additional evidence. (See *McLean Trucking Co. v. Industrial Comm'n* (1983), 96 Ill. 2d 213, 449 N.E.2d 832.) Claimant testified as to his inability to straighten up on December 30, 1978, which was the day he sought medical treatment. There was no work on Sunday, December 31, 1978, or on Monday, January 1, 1979. Thus, January 2 was merely the last day of work and the day of admission to the hospital.

Furthermore, Gumushian testified that claimant lifted babbitt during December 1978, either with the help of a crane, a co-worker, or with Gumushian himself. On January 2, 1979, claimant told Gumushian that "a few days before January 2nd his back was hurting." In addition, "right before he told [Gumushian]" that his back pain had returned while he was doing odds and ends in the shop and had not been "lifting any babbitt that day." Thus, Gumushian merely testified that claimant was not lifting babbitt the day he reported that his pain had returned. Reliance thoroughly explored this line of questioning with Gumushian and failed to resolve any ambiguities in his testimony. We cannot see how the date amendment prejudiced Reliance. We conclude that the Commission did not err in permitting claimant to amend the application. See *McLean Trucking Co. v. Industrial Comm'n* (1983), 96 Ill. 2d 213, 449 N.E.2d 832.

■ Reliance next contends it was denied due process of law because counsel for Crane Packing Company, claimant's employer in April 1978, was permitted to participate in the deposition of Dr. Matz, Reliance's examining physician. In addition to the present claim, claimant filed a separate claim for benefits for a back injury which al-

legedly resulted from a fall at Crane. While a motion to consolidate was before the Commission, but not ruled upon, some of the discovery involved both Crane and Reliance.

Reliance argues that its "opportunity to present witnesses pursuant to fundamental due process of law, was denied by the participation of an adverse non-party participating to the extent of producing and objecting to evidence along with conducting extensive cross-examination."

Initially, we note that Reliance raised no objection to the presence of Crane's attorney at the depositions of Drs. Feil, Shafer, and Miller. At the deposition of Dr. Cooper, taken by Crane, Crane's attorney announced that Reliance's attorney "was notified of the deposition and he chose not to attend." This point was again made by Crane's attorney at Dr. Matz' deposition. The absence of such objections at the other medical depositions undermines the reasoning behind the present contention.

At Dr. Matz' deposition, Reliance's attorney noted that if the motion for consolidation was denied, he moved to strike any testimony that Crane's attorney might raise. Claimant's attorney stated that "[a]ny questions that Counsel Smith [for Crane] asked the doctor, I will adopt as my own in consideration of Counsel Silverman's [for Reliance] motion to strike." He noted further that such a procedure would "save the doctor from answering duplicate questions."

Dr. Matz testified, in response to direct examination by Reliance's attorney, that the April 1978 accident at Crane "produced signs and symptoms consistent with a lumbar disc herniation."

Dr. Matz testified on cross-examination by Crane's attorney that carrying the molten metal alone might or could cause disc herniation. This lifting could, in and of itself, aggravate a preexisting low back problem. Dr. Matz agreed that it would be of some significance if claimant sought no medical care and missed no work from June 1978 through December 1978. The record reveals very little testimony, however, which assisted Crane or claimant. Dr. Matz' testimony regarding causal connection remained strong. In addition, he gave detailed answers which might tend to show that Reliance was not responsible for claimant's present back condition. Thus, even if an error occurred, it was harmless in light of the testimony elicited from Dr. Matz. We conclude that Reliance has failed to prove any prejudicial reversible error occurred.

■ Reliance contends further that the Commission's findings that the injury arose out of and in the course of the employment, and that it is causally connected to the present disability, are against the mani-

fest weight of the evidence. These issues are to be determined by the Commission, and its decision will not be altered unless it is against the manifest weight of the evidence. *Johnson Outboards v. Industrial Comm'n* (1979), 77 Ill. 2d 67, 394 N.E.2d 1176.

Claimant began working for Reliance in August 1978. In December, he began experiencing increasingly severe back pain. His duties included heavy lifting from time to time. By December 30, claimant had difficulty standing straight and was in severe pain. He was examined by his physician that day, and several days later he was hospitalized. He has not worked since that time. Thus, the chronology of events supports a finding that the accident arose in and out of the course of the employment.

■ Furthermore, the medical testimony supports the Commission's finding of causal connection. Dr. Feil testified that there was a causal connection, based on the fact that claimant was asymptomatic and received no medical care from June to December 1978. Moreover, lifting usually aggravates lumbar disc protrusion. Dr. Schafer opined that, based on the absence of any symptoms between June and December, the lifting of heavy metal pots was the most likely cause of the present condition. Dr. Miller also found the repetitive lifting to be the probable cause of the disability.

We hold that the medical evidence overwhelmingly supports the Commission's findings.

■ Reliance asserts there is no evidence of repetitive lifting. Dengler, Reliance's machine shop supervisor, testified that claimant's work was "heavy at times." Dengler described claimant's duties with the babbitt, which is a substance similar to molten metal, for use in bearings:

> "We do have a pot, which I would say is approximately forty pounds empty, which also has a couple of bars sticking out, two men can take it and lift it up on the stand, in order to lift it up. Or there is a crane available, they use the crane and set the babbitt, the pot. *** When it is full I would estimate [it weights] over a hundred pounds. *** [T]here is a crane available, the pot gets too heavy, they are supposed to use the crane."

Dengler admitted that the workers do lift weights more than 25 pounds while performing the job, but added that "they are not supposed to."

Gumushian explained that the pot weighed 100 to 110 pounds. Two men were required to lift it. This occurred "[s]ometimes twice a week, sometimes once in two months. *** It varied." It was possible

that in December 1978 the work with babbitt had to be done twice a week. Claimant lifted the babbitt during that time either with the help of a co-worker, Gumushian himself, or a crane.

Claimant testified regarding his duties at Reliance. As the Commission noted in its decision, there was considerable difficulty communicating, even through an interpreter, with the non–English-speaking claimant. He described his job as being heavy. His testimony supports the Commission's finding that claimant did indeed perform heavy lifting for Reliance during the month of December 1978. At times, he would have to lift the babbitt, and he would call a co-worker "to come and help me but being that I am the newest employee, sometimes they don't listen." However, "[m]ost of the time I lifted up myself." One size pot weighed 100 pounds, and the other weighed 75 pounds. As he performed the job during December, he experienced increasing pain in his lower back. "I worked one month with these machines and from day to day I started feeling pressure and pain. This is not a machine, it is called [babbitt]." When he did not use the crane, he sometimes had to lift it himself and carry it four or five feet.

The evidence was sufficient for the Commission to make a reasonable inference that repetitive lifting occurred. We find no error in the Commission's finding that as a result of the repetitive lifting claimant sustained accidental injuries, and that the ultimate breakdown of his bodily structure occurred on December 30, when he was incapable of straightening up.

■ Reliance also argues that claimant never told Drs. Feil or Schafer of a December 1978 work accident. However, Dr. Feil admitted claimant to the hospital on January 2, 1979, and the hospital record recites a history of claimant injuring his back at work.

■ Reliance maintains further that claimant's condition was such that any normal activity could aggravate the April 1978 injury at Crane. Reliance points to Dr. Feil's testimony that a protruded disc could reoccur spontaneously even from sneezing or coughing, without any trauma; and Dr. Schafer's testimony that a disc can herniate without trauma, even from bending over to tie a shoe, or due to normal wear and tear on the lower back. Where any normal activity can aggravate a preexisting condition, the disability is not compensable. (*Roberts v. Industrial Comm'n* (1983), 93 Ill. 2d 532, 445 N.E.2d 316.) Here, claimant testified he was free of symptoms from June to December 1978. Dr. Feil confirmed that claimant received no medical treatment during this period. It was not until claimant began working with the 100-pound babbitt in December that his pain became so severe that he was required to quit work and have multiple operations

performed on his back.

While Drs. Feil and Schafer stated that any activity could herniate a disc, Dr. Feil also stated that by June 1978 claimant was fully recovered from his prior condition. Dr. Feil emphasized that claimant was completely asymptomatic. His June 26, 1978, neurologic examination revealed all negative findings. Dr. Feil explained that the normal examination in June and the six-month gap in treatment indicated no pain or neurological involvement during that period. Moreover, Dr. Feil believed there was a much greater chance of injury from heavy lifting than from some unknown, spontaneous factor. Similarly, Dr. Schafer found the most likely cause of the present low back condition to be the heavy lifting at work. Moreover, even if the April 1978 accident had resulted in a herniated disc, the December 1978 lifting aggravated that condition. We do not believe the more general comments elicited from Drs. Feil and Schafer required the Commission to deny any award of benefits.

■ Finally, Reliance contends that the Commission's finding that claimant gave notice of an injury on December 30, 1978, is against the manifest weight of the evidence and that it is "undisputed that [claimant] did not notify [Reliance] of an accident, injury or lifting incident" at work. Reliance "suggests that [claimant's] withholding of information known to him at the time, constituted prejudice" to Reliance. Whether or not notice has been given is a question of fact for the Commission, and this court will not disturb its finding unless it is against the manifest weight of the evidence. *Thrall Car Manufacturing Co. v. Industrial Comm'n* (1976), 64 Ill. 2d 459, 356 N.E.2d 516.

Gumushian, an assistant foreman for Reliance and claimant's nephew, testified regarding the notice he had of claimant's back problems in December 1978. He thought it possible that he spoke with claimant about his back around December 15, and that claimant told him that his back was hurting more and more after lifting the babbitt. A "few days before January 2nd," claimant told Gumushian that his back was hurting. Claimant stated, "Andy [Gumushian], it is coming back." On the day claimant reported his back pain, he had not been lifting any babbitt. At that time, claimant also told Gumushian that his back had been getting worse while working for Reliance.

■ Claimant testified that he gave notice to several supervisors. Approximately 15 days before his hospitalization, he told Gumushian about his back pain. He told Gumushian, "My pain is getting worse, should I tell them this or will you tell them? Gumushian replied, "You speak for yourself."

About 10 days prior to December 30, 1978, claimant spoke with

Carl, the welding supervisor, and "told him I had an accident in Crane and the same pain is now beginning to hurt more." He also spoke to a supervisor named Ralph. On January 2, 1979, claimant spoke with Gumushian and Dengler and reported the hospitalization. Claimant informed Dengler that the pain had occurred and had become worse while working at Reliance.

The Commission found that this evidence, and noting claimant's difficulty in speaking and understanding English, established that Reliance received proper notice of claimant's accidental injuries of December 30, 1978. This finding is supported by the evidence, and we will not disturb it on review.

Accordingly, the judgment of the circuit court of Cook County confirming the decision of the Industrial Commission is affirmed.

Judgment affirmed.

BARRY, P.J., and WOODWARD, McCULLOUGH, and CALVO, JJ., concur.