KRESS CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Donald J. Forbes, Appellee).

Third District (Industrial Commission Division)   No. 3—89—0031WC

Opinion filed October 18, 1989.

David B. Mueller, of Cassidy & Mueller, of Peoria, for appellant.

Arthur R. Kingery, of Strodel, Kingery & Durree Associates, of Peoria, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

The petitioner, Kress Corporation (Kress), appeals from an order of the circuit court confirming the decision of the Industrial Commission (Commission) awarding compensation to Kress' employee, Donald

J. Forbes. The sole issue raised is whether the decision of the Commission was against the manifest weight of the evidence.

At the hearing before the arbitrator, Forbes testified that he had been employed since 1984 as a welder and material handler. On Friday, July 18, 1986, between 10:30 p.m. and midnight, he was getting ready to weld a large steel structure and was positioning it by the use of a crane. He felt he was losing control, and he grabbed the wrong chain on the crane, which caused the steel piece to start to come down on him. He pulled the other chain and lost even more control. The structure came over him, and he had to force it back into position. The steel structure was approximately 8 feet long and 2½ feet wide, and three-quarters of an inch thick, weighing 1,000 pounds or better. After the incident, which was not witnessed by anyone other than Forbes, Forbes continued to work the rest of his shift.

The next day, Saturday, Forbes, had a mild backache. As he worked on his lawnmower, he noticed that the pain was starting to increase. By Sunday, the pain was so severe that it required two people to get him out of bed. The pain was in the mid-lower part of his back.

Forbes could not get in to see Dr. Mullin, his family doctor until Tuesday. At that time, the doctor examined him and treated him for a pulled muscle, giving him pain medication. Two weeks after the injury, at the employer's request, he saw Dr. Hart, Kress' company doctor. Dr. Hart examined Forbes and asked him what he had done to himself. Forbes told him he did not know and that the only thing he had done was to work on his lawnmower. Then Dr. Hart asked him if he had done anything at work in which he might have strained himself, and Forbes told him about losing control of the structure and how he had to push it back with all his strength. According to Forbes, that effort took a lot out of him, but he did not feel pain or hurt at the time. Dr. Hart then stated that Forbes had suffered an industrial accident and placed Forbes in the hospital where he remained for eight days. He was treated with traction and given medication for pain.

Following his release from the hospital, Forbes contacted Dr. Hart. Kress' hearsay objection to Forbes' testimony about the conversation with Dr. Hart was sustained. Forbes made an offer of proof that in his conversation with Dr. Hart, Forbes told him that the pain went from his back down to his leg and caused him to be up all night. Dr. Hart responded that he thought Forbes had a slipped disc and that Forbes should go to Methodist Hospital for a CAT scan. After the test, Dr. Hart informed Forbes that he had a slipped disc and that

he would refer him to a specialist. Several days later, Dr. Hart called Forbes and told Forbes to call him back once his insurance problem (which Forbes was unaware of) was straightened out. Kress objected to the offer of proof but did not identify the basis for the objection.

Forbes testified further that he then saw Dr. Mullin, who supplied him with pain medication. About two months later, Dr. Hart called him. Again Kress' objection to Forbes' testimony regarding this conversation with Dr. Hart was sustained, and Forbes made another offer of proof, in which he stated that Dr. Hart informed Forbes that he was scheduling an appointment for him with Dr. Weinger, an orthopedic surgeon. Dr. Weinger operated on Forbes, after which his left leg was numb with no feeling, and he still suffered from backaches. Forbes continued under Dr. Weinger's care until March 1987, at which time Forbes was released to go back to work with some restrictions. However, when he reported to work, he was told by the day-shift foreman that he was laid off of work. At the time of the hearing, he had not yet returned to work, although he had applied for work elsewhere.

Forbes testified that his left leg is still numb and he has quite a few backaches. He cannot do anything strenuous around the house. By the end of the day, he feels completely worn out, without the stamina he used to have.

On cross-examination, Forbes testified that although he was aware of the company policy of reporting any accidental injuries taking place during work, he did not report the injury to anyone. He also admitted having had a couple of beers with his co-workers after work, and at that time, he had no problem sitting and did not notice anything unusual about his physical condition outside of the usual tiredness and stiffening he generally felt after working his shift.

Forbes testified further that when he got up on Saturday morning, he had a backache, but inasmuch as he had had this before, he did not pay much attention to it. He denied that he associated the pain he felt with his work on the lawnmower because he was in pain prior to working on the lawnmower. He also denied telling Dr. Mullin that he first experienced the pain while he was working on his lawnmower Saturday morning. He stated that he told the doctor he did not know what he had done to cause the pain in his back. He also denied telling Dr. Mullin that the pain started on Sunday morning. He further denied telling anyone that his back problem started on July 14, 1986, after lifting a heavy object.

According to Forbes, after he got the steel structure back in position, he was exhausted and felt a strain in his back which went all the

way down his back and legs but which went away after a few seconds. The first time he associated his back problems with the incident at work was when he saw Dr. Hart.

Kress then elicited the testimony from David McKinty and Gerald Simpson, co-workers of Forbes, that following work on Friday, July 18, 1986, they, Forbes, and other co-workers had a few beers together after work. Forbes appeared to have no difficulty sitting at a picnic table, although he had to climb over a cooler to sit down. Forbes made no complaints of pain or discomfort, and neither man noticed anything unusual about him.

Richard Merideth, manager of industrial engineering for Kress, testified as follows. According to Merideth, the steel structure Forbes was working on was a box beam and weighed 3,700 pounds. Based upon his experience and knowledge of the type of work Forbes was doing, Forbes would have had to lift the beam in order to push it as Forbes described, and it would have been literally impossible for a man to lift two tons of steel.

The medical records of Drs. Hart, Mullin, and Weinger were admitted into evidence, as were the evidence depositions of Drs. Hart and Mullin.

The arbitrator denied benefits, finding that Forbes had failed to prove that accidental injuries arose out of and in the course of his employment.

The Commission reversed the decision of the arbitrator and awarded benefits. The Commission found credible Forbes' testimony that he told Dr. Hart that he did not know the cause of his discomfort and that, upon questioning by Dr. Hart, he described his activities with the lawnmower and the incident at work, at which point Dr. Hart informed him that his condition could not have been the result of his activities at home but was related to the incident at work. The Commission noted that Forbes was a relatively young man who had not previously experienced back problems. Based upon the testimony of both Forbes and Dr. Hart, the Commission found that the incident at work caused a small extrusion of disc material which gradually became larger, causing increasing symptomology, and thus, Forbes was found to have sustained accidental injuries to his lower back which arose out of and in the course of his employment.

On review, the circuit court found that the decision of the Commission was supported by the evidence and confirmed the decision. Kress now brings this appeal.

Kress contends that the Commission erred in permitting Forbes to prove his case through the use of double hearsay. In an October 27,

1986, letter to Forbes' attorney, Dr. Hart wrote:

"He [Forbes] was seen in our office on August 8, 1986. He reported that while at work on July 20, 1986 at the Kress Corporation, he was doing some welding. He moved a sill. Then, he stated, he just could not get out of bed the next day. He entered with complaints of low back pain and pain radiating down the left leg."

During his deposition, Dr. Hart testified as follows:

"Q. What history was given?

A. He said while working on welding some sills he just couldn't get up and could not get out of bed the next day.

Q. And—

A. And he had some back and left leg pain.

Q. Did he provide a date?

A. He said the date of the accident was 20th of July, 1986.

Q. Doctor, do you have an opinion whether this was a work-related injury?

A. No. I just assumed it was because he was sent to me as the company physician. The man was in trouble, and I didn't pursue it any further than that.

Q. You only know what Mr. Forbes told you?

A. Yes."

At the hearing before the arbitrator, over Kress' objection, Forbes testified as follows:

"He [Dr. Hart] says, do you have any idea what you were doing? And I told him about working on my lawn mower. And he says well, what did you do the last day of work. And he says, tell me what you did or anything that you might have strained yourself. I said the only thing I can remember at work was when I was working on the structure and I lost control over it and I had to push it back up with all my strength. And it took a lot out of me. But I told him, I says, I wasn't, you know, later on after work I wasn't feeling nothing nor was I hurt at the time I did it. *** He [Dr. Hart] told the nurse to put me in the hospital today. And this was a work industrial injury."

Although the arbitrator let the testimony stand over Kress' objection, the arbitrator also stated that she would take into consideration Dr. Hart's deposition and the history given to him at the time he examined Forbes.

■ "Hearsay evidence is defined as 'a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the

credibility of the out-of-court asserter.' [Citation.]" (*Denny v. Burpo* (1984), 124 Ill. App. 3d 73, 75.) Kress concedes that Dr. Hart is Kress' company physician and therefore Kress' agent, whose statements would ordinarily be received into evidence as admissions. However, Kress argues, since Forbes' conversation with Dr. Hart is offered by Forbes to prove that the disputed accident took place, that objected testimony involves not only the statements of Dr. Hart but those of Forbes confirming the accident, which Kress maintains is double hearsay and inadmissible to prove that the accident took place.

We note that Dr. Hart's deposition testimony is at variance with Forbes' arbitration testimony. According to his deposition, Dr. Hart "assumed" that Forbes suffered an industrial accident, while Forbes testified that after he described both his lawnmower activity and the incident at work, it was Dr. Hart who told him the incident at work had caused his injury.

■ ■ "Hearsay within hearsay, often referred to as double level or multiple hearsay, is admissible if each of two or more statements falls within an exception to the Hearsay Rule." (E. Cleary & M. Graham, *Handbook of Illinois Evidence* §805, at 472 (3d ed. 1979).) Our supreme court has held that a statement made by a company doctor is admissible on the ground that the doctor was the agent of the employer, and thus, the report constituted an admission against interest. *Nollau Nurseries, Inc. v. Industrial Comm'n* (1965), 32 Ill. 2d 190, 192.

■ Further, in *Shell Oil Co. v. Industrial Comm'n* (1954), 2 Ill. 2d 590, the supreme court stated:

> "Petitioner [employer] objects to a portion of Dr. Fritsch's testimony as hearsay and self-serving as obtained from the claimant, wherein claimant stated that he slipped on April 11, 1950, while working for the petitioner in the course of pulling on a pipe, and injured his back. It is an exception to the hearsay rule, however, that declarations of an injured person to his treating physician as to his physical condition, and the cause thereof are admitted in evidence for the reason that it is presumed that a person will not falsify such statements to a physician from whom he expects and hopes to receive medical aid." 2 Ill. 2d at 602.

We conclude, therefore, that Forbes' testimony regarding his conversation with Dr. Hart was double hearsay but properly admitted and, thus, properly considered by the Commission in its determination of causation of Forbes' condition.

Having determined that Forbes' testimony was properly admitted,

we now must determine whether the decision of the Commission was against the manifest weight of the evidence.

■ It is the province of the Commission to determine the facts and draw reasonable inferences from the evidence in workers' compensation cases. In reviewing the findings of the Commission, the function of this court is limited to determining whether they are against the manifest weight of the evidence. (*United Airlines, Inc. v. Industrial Comm'n* (1980), 81 Ill. 2d 85, 95.) The Commission is the judge of the credibility of the witnesses and the weight to be given to their testimony. (*Caterpillar Tractor Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 35, 43.) Furthermore, the reviewing court will not substitute its judgment for that of the Commission, and it will not disregard permissible inferences drawn by the Commission merely because it might have drawn other inferences from such facts. *City of Chicago v. Industrial Comm'n* (1975), 60 Ill. 2d 283, 286.

■ While acknowledging the accuracy of the foregoing statements of law, Kress maintains that while the Commission is not bound by the arbitrator's decision, recent decisions by this court demonstrate that the court will carefully scrutinize Commission decisions which are contrary to those of the arbitrator, especially where no new evidence is presented to the Commission, relying on *Cook v. Industrial Comm'n* (1988), 176 Ill. App. 3d 545, and *Orkin Exterminating Co. v. Industrial Comm'n* (1988), 172 Ill. App. 3d 753.

In *Orkin Exterminating Co.*, this court reinstated the decision of the arbitrator that the claimant, Apponey, was not entitled to benefits. We determined that the Commission's decision that Apponey was entitled to benefits was against the manifest weight of the evidence. Specifically, we noted:

"Proof of either unwitnessed accident alleged in this case depended upon the petitioner's [Apponey's] testimony regarding the accident's circumstances and, thus, upon his credibility. His credibility was contradicted by numerous elements in the evidence. For example, on the day of the alleged July 17 accident at Carnet Grain Company in Beardstown, although the petitioner and his manager after the incident drove together from Carnet to their Galesburg office, the petitioner did not mention to the manager that he had been injured. Additionally, on August 2 when the petitioner was first medically treated for the alleged July 17 injuries, he stated in his chiropractic admission form that his condition had begun approximately two months earlier, *i.e.*, at the beginning of June rather than in middle July as he claimed in seeking benefits. Further, he did not express

to his chiropractor on August 2 a connection between his current pain and the July 17 accident and he indicated that he did not know the cause for his complaints.

The petitioner's credibility was also challenged regarding the alleged August 6 accident at the Keeling residence. For example, when the petitioner called his manager from the Keeling job that day, after the alleged incident, he did not mention the injury which he now claims had occurred. Further, following that alleged disabling accident, the petitioner continued to work for approximately three weeks without giving any notice of the incident to the employer." 172 Ill. App. 3d at 757.

Kress contends that the facts of the case before us closely parallel the facts in *Orkin*. Both involved unwitnessed "accidents." In both cases, the claimants made no initial complaint of injury or pain, and although in the company of co-workers, made no mention of the occurrence, and nothing unusual about the claimant's condition was noted by a co-worker in either case. Kress also relies on the testimony of Richard Merideth that it would have been literally impossible for a man to lift two tons of steel, thus contradicting Forbes' description of the accident. Kress further relies on Dr. Hart's testimony that Forbes' condition would have produced an immediate onset of symptoms. Finally, Kress points to Forbes' statements to Dr. Mullin that he had been working on his lawnmower prior to the onset of the pain and to the report from the Institute of Physical Medicine and Rehabilitation, wherein Forbes reported low-back pain as of July 14, 1986, which preceded his alleged accident at work.

Despite the similarities, we find *Orkin* distinguishable from the case at bar. In *Orkin*, Apponey initially stated that his condition of leg pain started two months earlier and from an unknown cause; it was only after he had had surgery that he informed his employer that he had injured himself at work. In the present case, Forbes described both his work on the lawnmower and the incident at work in his visit to Dr. Hart, who, according to Forbes, then determined that his condition was the result of the incident at work, not his work on his lawnmower. Although Dr. Hart testified on deposition that he had no opinion as to whether Forbes' condition was the result of an industrial accident, as we have previously stated, credibility is for the Commission to determine. (*Caterpillar Tractor Co.*, 97 Ill. 2d at 43.) Further, Apponey was impeached by evidence that he had omitted prior employments on his job application with Orkin and had, in fact, received a worker's compensation award for a prior back injury. No such attacks weakened Forbes' credibility. Although Merideth testified that

Forbes would have to lift and then push to maneuver the steel beam as Forbes described, Forbes testified that he only pushed the beam but that it took great effort. Again, this is a question of credibility from the Commission to resolve.

While Dr. Hart testified that Forbes' condition would have produced an immediate onset of pain, he also stated immediately thereafter as follows:

"Q. In your opinion, Doctor, based upon a reasonable degree of medical certainty, could such an extrusion occur without producing immediate symptoms?

A. Of course, you have all different degrees of extrusion and—but I would have to say with the degree of extrusion that was present at the time he was operated that would cause symptoms. *Now, I can't tell you, and I have no way of telling you if at the start it was that big or whether it wasn't, I don't know, I can't answer that.*" (Emphasis added.)

Since Dr. Hart could not testify as to how big the extrusion was at the time of the alleged injury, the fact that Forbes had no immediate symptoms does not eliminate his accident at work as the cause of his injury.

Finally, Kress argues that both Dr. Mullin's report and the institute report evidence that Forbes' pain was other than work related. Dr. Mullin testified at his evidence deposition as follows:

"Q. And on July 22, 1986, when you saw Mr. Forbes, was a history taken?

A. Yes.

Q. And could you please describe for the arbitrator what that history was?

A. He complained of a low back pain, was [*sic*] pain radiating down the outside of the left leg to the knee. This had started the previous Sunday morning, July 20, 1986.

Q. Anything else?

A. That was his chief complaint at the time.

Q. Did he provide a history to you of what his activities were prior to Sunday when the low back pain first commenced?

A. At that time, he told me he had been working on a lawnmower on Saturday."

Forbes denied telling Dr. Mullin that the pain he felt was associated with his work on the lawnmower; he did testify that it had started prior to his working on the lawnmower and grew worse while he was working on it. He also denied that he had told him that it was Sunday morning when the pain began. Likewise, he also denied that he told

the institute that his pain commenced on July 14, 1986, which was four days prior to the date on which he alleged he was injured at work. We also note that the report from the institute states "PT states he was working and was lifting heavy objects." The Commission could properly infer from this statement that Forbes was indeed injured at work but confused the dates.

Kress argues that there is no testimony in the record to support the Commission's finding that Forbes' alleged accident caused "a small extrusion of disc material which gradually became larger causing increasing symptomatology in the days following the accident." Kress acknowledges that in *Union Starch & Refining Co. v. Industrial Comm'n* (1967), 37 Ill. 2d 139, quoting from *Plano Foundry Co. v. Industrial Comm'n* (1934), 356 Ill. 186, 198-99, our supreme court stated:

> " 'Proof of the state of the health of the employee prior to and down to the time of the injury, and the change immediately following the injury and continuing thereafter, is competent as tending to establish that the impaired condition was due to the injury. [Citation.]' " (37 Ill. 2d at 143.)

However, Kress argues that the change was not immediate, since Forbes did not feel pain until the next day. The term "immediate" is a relative one. In the case before us, Forbes testified that the accident occurred between 10:30 p.m. and midnight. He awoke the next day at 8 a.m. with a backache, which progressively worsened. Further, it was Dr. Hart's testimony that it would depend on the size of the extrusion as to when the first symptoms might occur. Since Forbes had experienced no prior back problem, the Commission could reasonably draw the inference from the record that Forbes' incident at work had caused a small extrusion which grew larger and more symptomatic.

Kress' reliance on *Lyons v. Industrial Comm'n* (1983), 96 Ill. 2d 198, *Johnson v. Industrial Comm'n* (1982), 89 Ill. 2d 438, and *Banks v. Industrial Comm'n* (1985), 134 Ill. App. 3d 312, is misplaced. In *Lyons*, there were no witnesses to the employee's accident, and he continued to work for some days thereafter. The Commission's decision denying benefits was upheld by the reviewing court, which ruled that it was possible that this was a case of a loyal and dedicated employee who did suffer an accident, and who, instead of complaining, continued to work as long as he was able; however, since the Commission was the fact finder and its decision was not against the manifest weight of the evidence, it must be affirmed.

In *Banks*, there was evidence that the employee had injured his

back in two separate work-related injuries for which he had received compensation. The reviewing court again confirmed the decision of the Commission since, based upon the evidence, the Commission could have reached a decision that the employee failed to meet his burden of proof.

Finally, in *Johnson*, the reviewing court set aside the award of benefits to the employee by the Commission. However, in that case, the reviewing court found against the employee's argument that she proved an accidental injury under a theory of repetitive trauma because she had failed to prove that the condition was traceable to a definite time, place, and cause.

The cases relied on by Kress illustrate situations in which the employee's testimony establishing causation has been impeached or his or her credibility has been effectively challenged or the decisions are the result of permissive inferences from the records. In the case before us, Forbes' credibility has not been contradicted to the extent that the claimants in the cases relied on by Kress were. While Kress sought to contradict Forbes' testimony by the testimony of other witnesses, the Commission, as we have repeatedly stated, is the judge of the credibility of the witnesses, and we can find no reason in this case why the Commission could not find Forbes to be a credible witness.

In the case at bar, the evidence supported more than one inference. That the claimant suffered a compensable accident is a permissible inference from the record, and, therefore, we have no basis for overruling the Commission. We conclude, therefore, that the decision of the Commission is not against the manifest weight of the evidence.

The judgment of the circuit court is affirmed.

Judgment affirmed.

BARRY, P.J., and McNAMARA, McCULLOUGH, and LEWIS, JJ., concur.