MARGARETTE I. PRESSON, Appellant, v. THE INDUSTRIAL COMMIS-
SION *et al.* (K mart Corporation, Appellee).

Fifth District (Industrial Commission Division) No. 5—89—0503WC

Opinion filed May 18, 1990.—Rehearing denied August 10, 1990.

Mateyka & Hill, P.C., of Granite City, for appellant.

Ganan & Shapiro, of Chicago (Jay M. Shapiro, of counsel), for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

The petitioner, Margarette I. Presson, filed a petition for benefits under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*). The arbitrator awarded her temporary total disability (TTD) benefits, permanent total disability (PTD) benefits, and medical expenses. On review, the Industrial Commission affirmed the medical expenses award, but reduced both disability awards. The circuit court confirmed the Commission's decision. The petitioner appeals.

At the hearing before the arbitrator, the petitioner testified that on July 24, 1981, when she was 49 years old, she injured her lower back while working for the respondent K mart Corporation. As she was lifting a box, she felt a pulling in the bottom part of her back. She continued working for several days, but the pain worsened, and on August 3, 1981, she sought medical attention from Dr. Otto Kremer. Dr. Kremer examined her, took X rays, and administered heat treatments. He eventually referred her to Dr. Robert E. Schultz, a neurosurgeon.

Dr. Schultz testified by deposition that the results of a myelogram performed on the petitioner on January 26, 1982, were normal. He diagnosed her as having a chronic low back strain secondary to sacroiliac joint dysfunction. He opined that she was incapable of returning to work during the period from when he first saw her until his last examination on October 30, 1985. However, on cross-examination Dr. Schultz admitted that his opinion regarding the petitioner's ability to

return to work was based on his belief that her employment duties involved lifting boxes and stocking merchandise. When told the duties of a customer greeter, Schultz stated that that type of employment could certainly have been tried by the petitioner for the past 18 months. Moreover, Schultz agreed that a total lack of physical activity could be detrimental to her.

Dr. Walter Heidke, a chiropractor, testified by deposition that he had examined the petitioner several times from July 15, 1983, through October 31, 1983. He diagnosed that she was suffering from a soft tissue injury of the lumbar spine, and treated her with hot packs and sine wave therapy. Heidke opined that he could not envision the petitioner gainfully employed. However, he admitted that in the event she could tolerate employment, it would be in her best interest to become more mobile.

At the request of the respondent, chiropractor Theirld Sarver examined the petitioner on March 6, 1985. He concluded that the petitioner did not suffer from any abnormalities and that she could return to work without any restrictions. He further opined that she was a malingerer and that her condition required no further treatment.

Orthopedic surgeon Marshall Conrad examined the petitioner at the respondent's request on January 8, 1982, on October 18, 1982, and on January 27, 1984. Conrad noted that at the time of his last examination she was still complaining of low back pain. On that occasion, X rays revealed a moderate narrowing of the lumbosacral disc space, which the petitioner had not had before. He noted that this type of change was typical of degenerative disc disease and that it could occur in the normal process of aging. Conrad stated, however, that there was no abnormality involving the spine or any of the intervertebral discs. He diagnosed the petitioner as having a "sprain type injury to the low back." In each of his three reports based on his three examinations of the petitioner, he indicated that she could have returned to work at any time provided she was not required to stand for a full eight hours or sit for a full eight hours. Moreover, Conrad noted that the petitioner should not lift more than 15 pounds and that she should use a lumbosacral corset.

Lee Ann Ray, the personnel and training manager for the Cahokia K mart store, testified that on November 1, 1982, she offered the petitioner, by letter and telephone, a job meeting the restrictions placed upon her by Dr. Conrad. Ray also testified that the job was that of customer greeter. She explained that as a customer greeter the petitioner would be able to sit or stand whenever she wanted and that a stool would be provided for her. Furthermore, she would not be re-

quired to do any lifting. The petitioner never responded to Ray's offer. On cross-examination, Ray explained that she personally had not made the decision that the petitioner could handle the offered job. Rather, the decision was made by others at the company's international headquarters after they reviewed Dr. Conrad's report.

On December 23, 1986, the arbitrator awarded the petitioner $235^{6}/_{7}$ weeks of TTD under section 8(b) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(b)) and found her permanently and totally disabled under section 8(f) (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(f)). The arbitrator further awarded the petitioner $3,347.90 for medical expenses. On review, the Commission reduced the award of TTD to $67^{6}/_{7}$ weeks and reduced the PTD award to 15% of the man as a whole under section 8(d)(2) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(d)(2)). The Commission affirmed the arbitrator's award of medical expenses. The circuit court confirmed the Commission's decision. This appeal followed.

The petitioner first argues on appeal that Dr. Kremer's reports were never certified and therefore were not properly a part of the evidentiary record before the Commission. She further contends that the Commission erred in relying upon information from those reports in its decision.

■■ After reviewing the Commission's written decision in the instant case, we find that the Commission's consideration of the questioned evidence did not prejudice the petitioner nor did it affect the outcome of the case. The Commission merely noted that Dr. Kremer treated the petitioner on August 3, 1981, and diagnosed her as having a severe sprain of the sacroiliac joint and a lumbosacral sprain. Moreover, Kremer's diagnosis was similar to the diagnosis made by the petitioner's own expert, Dr. Schultz. Accordingly, we find that no reversible error occurred. See *Illinois Piping Co. v. Industrial Comm'n* (1987), 156 Ill. App. 3d 955, 509 N.E.2d 1107; *Reliance Elevator Co. v. Industrial Comm'n* (1988), 171 Ill. App. 3d 18, 524 N.E.2d 1022.

The petitioner next argues that the Commission improperly admitted Ray's testimony that the greeter job was within the restrictions placed upon the petitioner by Dr. Conrad. She contends that Ray had no firsthand knowledge of the restrictions placed upon her by Dr. Conrad and therefore Ray's testimony that the customer greeter job fell within those restrictions was hearsay.

■ Hearsay evidence is an out-of-court statement offered to show the truth of the matter asserted therein, and thus its value rests upon the credibility of the out-of-court asserter. (*Kress Corp. v. Industrial Comm'n* (1989), 190 Ill. App. 3d 72, 545 N.E.2d 1046.) Even when

hearsay evidence is erroneously admitted, such error does not require reversal when there has been no prejudice or the evidence does not materially affect the outcome. (*Illinois Piping Co. v. Industrial Comm'n* (1987), 156 Ill. App. 3d 955, 509 N.E.2d 1107.) Furthermore, it is presumed that the Industrial Commission considers only competent and proper evidence in reaching its decision. *English v. Industrial Comm'n* (1986), 151 Ill. App. 3d 682, 502 N.E.2d 1247.

■ In the case at bar, even if Ray's statements were inadmissible to prove that the customer greeter job fell within Dr. Conrad's restrictions, they were nevertheless admissible to prove that K mart offered the petitioner a customer greeter job on November 1, 1982. Ray properly testified about the activities the job entailed. In view of Dr. Conrad's deposition, the Commission had other evidence from which it could determine whether the job described by Ray fell within the restrictions placed on the petitioner by Dr. Conrad. Therefore, the petitioner was not prejudiced by the introduction of the questioned evidence and no reversible error occurred.

The petitioner next argues that the Commission erred in finding that she was no longer disabled following the November 1, 1982, offer of light-duty work within her restrictions.

■ It is well settled that TTD benefits are available only from the time an employee is injured until he has recovered as much as the character of the injury will permit. (*Archer Daniels Midland Co. v. Industrial Comm'n* (1988), 174 Ill. App. 3d 918, 529 N.E.2d 237.) To prove TTD, a claimant must show not only that he did not work, but also that he was unable to work. (*County of Cook v. Industrial Comm'n* (1988), 177 Ill. App. 3d 264, 532 N.E.2d 280; *Rambert v. Industrial Comm'n* (1985), 133 Ill. App. 3d 895, 477 N.E.2d 1364.) The determination of the length of an employee's TTD is a question of fact to be resolved by the Commission. (*Howard v. Industrial Comm'n* (1980), 81 Ill. 2d 50, 405 N.E.2d 750.) The Commission is the judge of the credibility of the witnesses and the weight to be given their testimony. It is for the Commission to decide which of the two conflicting medical opinions given in a case is to be accepted. (*Chicago Rotoprint v. Industrial Comm'n* (1987), 157 Ill. App. 3d 996, 509 N.E.2d 1330.) The Commission is not bound by the arbitrator's decision, and the Commission's decision will not be set aside on review unless it is against the manifest weight of the evidence. *Rambert v. Industrial Comm'n* (1985), 133 Ill. App. 3d 895, 477 N.E.2d 1364.

■ In the case at bar, Dr. Schultz stated in his deposition that the petitioner could have tried employment as a customer greeter only as of July 1984. On the other hand, Dr. Conrad in effect stated in

his deposition that the petitioner could have returned to work at any time after January 8, 1982, provided she used a lumbosacral corset, did not lift more than 15 pounds, and did not stand for a full eight hours or sit for a full eight hours. On November 1, 1982, the petitioner was offered the job of customer greeter. It was established that the duties of that job were within the restrictions set by Dr. Conrad. Nevertheless, the petitioner refused to even attempt working as a greeter. Since it was for the Commission to weigh the conflicting medical opinions, we find that its decision that the petitioner was no longer temporarily totally disabled after November 1, 1982, was not against the manifest weight of the evidence.

The petitioner next argues that the Commission's decision to reduce the arbitrator's award of PTD under section 8(f) to an award of 15% permanent partial disability under section 8(d)(2) was against the manifest weight of the evidence.

An employee is totally and permanently disabled for the purpose of workers' compensation benefits when he is unable to make some contribution to industry sufficient to justify paying him wages. (*A.M.T.C. of Illinois, Inc. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 397 N.E.2d 804.) If the claimant's disability is limited in nature so that he is not obviously unemployable, or if there is no medical evidence to support a claim of total disability, the burden is on the claimant to establish the unavailability of employment to a person in his circumstances. (*Ceco Corp. v. Industrial Comm'n* (1983), 95 Ill. 2d 278, 447 N.E.2d 842.) Because of the Industrial Commission's expertise in the area of workers' compensation, its finding on the question of the nature and extent of permanent disability should be given substantial deference. (*English v. Industrial Comm'n* (1986), 151 Ill. App. 3d 682, 502 N.E.2d 1247.) It is for the Commission to resolve disputes in the evidence and draw reasonable inferences and conclusions from that evidence, and the Commission's decision will not be set aside on review unless it is contrary to the manifest weight of the evidence. *English v. Industrial Comm'n* (1986), 151 Ill. App. 3d 682, 502 N.E.2d 1247.

■ In the instant case, Dr. Heidke testified that he could not envision the petitioner gainfully employed in any type of job. On the other hand, the Commission had before it the evidence of the work restrictions Dr. Conrad placed on the petitioner, along with the description of the light-duty job the respondent offered her. Dr. Conrad testified that the job offered was one which the petitioner could perform. Additionally, Dr. Schultz testified that the results of a myelogram performed on the petitioner were normal and that she certainly

could have tried the offered job. We further note that although it appears the petitioner's back condition was not operable, the evidence as a whole does not show that she would never be able to work. In fact, the doctors generally suggested that she should at least attempt to work. Since it was for the Commission to resolve disputes in the evidence and draw reasonable inferences therefrom, we hold that the Commission's finding that the petitioner was 15% permanently disabled under section 8(d)(2) was not against the manifest weight of the evidence.

For the foregoing reasons, we affirm the judgment of the circuit court of Madison County.

Affirmed.

McNAMARA, WOODWARD, McCULLOUGH, and LEWIS, JJ., concur.