(No. 57433.—

MASON & DIXON LINES, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Edward Clasby, Appellee).

*Opinion filed December 16, 1983.*

Rooks, Pitts, Fullagar & Poust, of Chicago (Douglas F. Stevenson, Ian M. Sherman, and Storrs W. Downey, of counsel), for appellant.

Dowd & Dowd, Ltd., of Chicago (Joseph V. Dowd and Philip J. McGuire, of counsel), for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Claimant, Edward Clasby, filed a claim under the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*) for injuries allegedly sustained while in the employ of respondent, Mason & Dixon Lines, Inc. An arbitrator awarded claimant permanent total disability benefits and medical expenses. The award was affirmed by the Industrial Commission and subsequently confirmed by the circuit court of Cook County. Respondent appealed directly to this court. 87 Ill. 2d R. 302(a).

Petitioner, an obese, 56-year-old truck-loading-dock worker, had been diagnosed in January 1978 as suffering from "uncontrolled diabetes," a related gangrenous ulcer on his right foot, and arteriosclerosis in both feet. Following hospitalization and treatment which included a strict diabetic diet, insulin and two surgical procedures, petitioner returned to work in February 1979. Except for a four-month leave of absence to care for an injured sister, he continued working until March 1980.

Claimant testified that on March 19, 1980, a wheeled, hand-propelled cart about six feet long, four feet wide, weighing approximately 185 pounds, called a "flat," and

carrying 600 pounds of cargo rolled over his right foot and "just barely creased the left one." He further testified that on March 17 a similar cart carrying approximately 500 pounds of cargo had rolled over his right foot and "leaned" onto his left foot. Claimant asserts that he "mentioned" the matter to his supervisor at the time of the occurrence, but it is clear that he did not fully report any accident to his supervisor until March 27.

Claimant's supervisor, Robert Sopiarz, testified that he did not hear of any injury until March 27. On that date, however, he witnessed a cart fall on one of claimant's feet. The supervisor could not recall which foot was involved but testified that claimant exhibited and complained only of his right foot on that date, although claimant testified that he told his supervisor that the right foot was "the worse one." The supervisor testified that claimant's right great toe was black on the 27th and that the flesh on the next two toes was eaten away. It is agreed by both parties that several other workers were present when claimant injured and exhibited his foot, but none of those persons was called to testify. It is apparently claimant's position that supervisor Sopiarz was mistaken, and that the episode he recalled as happening on the 27th actually occurred on the 19th.

Claimant completed an accident report on March 27 in which he stated the date of the accident as March 20. However, respondent's records indicated that claimant did not work on March 20, and claimant testified that he mistakenly stated that date in the report and that he had called in sick on the 20th because his feet were bothering him from the previous day's accident. Claimant referred only to the singular "foot" and "toe" in the accident report.

Claimant was sent to the company physician, Dr. Edgar Jose Vargas, at the Sunnyside Medical Clinic for an examination on March 27. There, claimant complained of

injury to his right foot and told Dr. Vargas that the accident occurred seven days earlier. Dr. Vargas diagnosed claimant's condition as diabetic gangrene. The following day Dr. Patel, who was also associated with the clinic, saw claimant, and claimant testified he told Dr. Patel he had injured both feet, and that Dr. Patel examined both. On March 29 claimant was admitted to Cabrini Hospital.

On April 3 claimant was transferred to Columbus Hospital, where he apparently reported to the hospital that both feet were injured in an employment accident on March 15, and that his right foot was "slightly dark prior to the accident but soon became totally black." Claimant later testified that there was no discoloration prior to the accident. The condition of both of claimant's feet continued to deteriorate, and on May 5 both legs were amputated six inches below the knees.

Dr. Paul D. Belich, who performed the amputation, testified in a deposition that there was a causal relation between the alleged accident and the gangrenous condition of claimant's feet. He stated that the condition of claimant's right foot on March 27 could have developed within eight or nine days after any trauma. Although Dr. Belich's opinion was based on the assumption that no discoloration existed prior to the accident, he testified that any trauma to claimant's feet could have aggravated a preexisting gangrenous condition and led to the eventual amputation. Although respondent's medical expert, Dr. William Daniel Barnhart, indicated in his deposition that he believed the amputations were the natural result of the diseased conditions, he conceded that any trauma could have aggravated claimant's condition.

The arbitrator concluded that claimant sustained injuries to both feet on March 17 and March 19, and that such injuries resulted in the amputation of claimant's feet. Claimant was awarded $40,279.75 for necessary

medical expenses pursuant to section 8(a) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(a)) and $266.67 per week for life pursuant to section 8(f) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(f)).

The Industrial Commission majority affirmed the amount of the award but concluded that claimant sustained injuries to both feet on March 19, and that no accident occurred on March 17. The dissenting commissioner believed that claimant failed to establish that the March 19 accident also involved his left foot.

Respondent argues here that the Industrial Commission's conclusion that claimant sustained an injury arising out of and in the course of his employment on March 19 is contrary to the manifest weight of the evidence. Respondent asserts that an accident did not occur on March 19 and that claimant fabricated his story in order to recover for amputations his preexisting diabetic condition made inevitable. Particular emphasis is placed on the fact that claimant stated four separate dates upon which the accident allegedly occurred and that claimant's supervisor suggested yet a fifth date.

Respondent suggests that claimant initially selected March 20 as the date because he was aware that the blackened condition of his right great toe on March 27 would have taken at least a week to develop if it was the result of trauma. As earlier noted, after it was revealed that claimant did not work on March 20, he stated that March 19 was the date of the injury and in a hospital report that March 15 was the date the accident occurred. When testifying later he stated that two accidents occurred, one on March 17 and the other on March 19.

Our decisions emphasize the established principle that findings of the Industrial Commission will not be set aside unless they are contrary to the manifest weight of the evidence. (*Roberts v. Industrial Com.* (1983), 93 Ill.

2d 532, 538; *Spector Freight System, Inc. v. Industrial Com.* (1983), 93 Ill. 2d 507, 514.) The resolution of factual questions, including the determination of witness credibility, is normally the function of the Industrial Commission (*Goldsamt v. Industrial Com.* (1982), 93 Ill. 2d 115, 121; *Archer Daniels Midland Co. v. Industrial Com.* (1982), 91 Ill. 2d 210, 216), and the Commission's findings will not be disturbed merely because the evidence may support more than one plausible conclusion (*Zick v. Industrial Com.* (1982), 93 Ill. 2d 353, 359-60; *Ragler Motor Sales v. Industrial Com.* (1982), 93 Ill. 2d 66, 71-72; *Benson v. Industrial Com.* (1982), 91 Ill. 2d 445, 450).

We agree with the respondent that claimant's inconsistencies as to the date the accident occurred create credibility questions, but the task of judging that credibility is usually left to the Commission. (*Archer Daniels Midland Co. v. Industrial Com.* (1982), 91 Ill. 2d 210, 216; *Caterpillar Tractor Co. v. Industrial Com.* (1947), 397 Ill. 474, 480.) While it is possible, as respondent suggests, that claimant's testimony could be a deliberate falsification designed to secure compensation for a result which was already inevitable, the Commission expressly determined that claimant's testimony as to an accident on March 19, 1980, was credible, and, while we might well have found otherwise were we the trier of fact, we cannot now say that the Commission's finding that an accident occurred to claimant's right foot on that date is contrary to the manifest weight of the evidence.

Respondent nonetheless contends that the Commission's finding of injury to claimant's left foot in the March 19 accident is contrary to the manifest weight of the evidence. It argues that claimant did not complain of injury to his left foot until April 3, more than two weeks after the accident occurred. Claimant's accident report referred only to the singular "foot" and "toe," and both

Dr. Vargas and supervisor Sopiarz testified that on March 27 claimant complained of injury to the right foot only. The Commission, however, apparently accepted claimant's testimony to the contrary.

A decision of the Industrial Commission will not be disturbed merely because differing inferences may reasonably be drawn from the evidence. (*Walden v. Industrial Com.* (1983), 93 Ill. 2d 527, 532; *Roberts v. Industrial Com.* (1983), 93 Ill. 2d 532, 537-38; *Revere Paint & Varnish Corp. v. Industrial Com.* (1968), 41 Ill. 2d 59, 63.) While, again, we might not have reached the same conclusion, were we the fact finder, the Commission's determination that an injury to the left foot occurred is not, in our judgment, contrary to the manifest weight of the evidence.

Respondent's final argument is that the Industrial Commission's finding of a causal relation between the accident and the subsequent amputation of claimant's feet is contrary to the manifest weight of the evidence. Respondent relies on the testimony of Dr. Belich and Dr. Barnhart that the natural progression of claimant's diabetic condition could have led to amputation regardless of any trauma to his feet.

It is axiomatic that recovery is allowed under the Workmen's Compensation Act when an employment accident aggravates or accelerates a preexisting disease. (*Peoria Motors, Inc. v. Industrial Com.* (1982), 92 Ill. 2d 260, 264; *Caterpillar Tractor Co. v. Industrial Com.* (1982), 92 Ill. 2d 30, 36; *Goldblatt Brothers, Inc. v. Industrial Com.* (1981), 85 Ill. 2d 172, 177.) That the same consequences of a preexisting disease might have resulted in the absence of an accident is not the test. (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17-18.) The appropriate inquiry is not whether the amputation of claimant's feet would have ultimately been required due to his diabetic condition; rather, it is whether

the accident aggravated his condition or accelerated the processes which led to the amputation. Both experts acknowledged that any trauma to the claimant's feet could have aggravated his condition and hastened the eventual amputation. A finding of a causal relation may be based on a medical expert's opinion that an accident "could have" or "might have" caused an injury (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 18), and, in view of the testimony of Dr. Belich and Dr. Barnhart, it cannot be said that the Commission's finding of a causal relationship is contrary to the manifest weight of the evidence.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*