CASSENS TRANSPORT COMPANY, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Bernard Shaw, Appellee).

Second District (Industrial Commission Division)   Nos. 2—93—1188WC, 2—93—1189WC cons.

Opinion filed May 5, 1994.

John H. Guill, of Roddy, Power, Leahy, Guill, Zima & Gifford, Ltd., of Chicago, for appellant.

Chester R. Chostner, Jr., of Rockford, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

These consolidated appeals by respondent Cassens Transportation Company, Inc., are from orders of the circuit court of Winnebago County confirming two decisions of the Illinois Industrial Commission (Commission) relating to claimant Bernard Shaw. Winnebago County case No. 93—MR—130 involved the judicial review of the Commission's decision in 91—WC—11512. Claimant filed an application for adjustment of claim on March 4, 1991, alleging disk herniation in the low back due to repetitive trauma with a date of accident of February 15, 1988. The arbitrator awarded claimant temporary total disability (TTD) benefits of $554.27 per week for $26^1/2$ weeks. (Ill. Rev. Stat. 1991, ch. 48, pars. 138.8(b), 138.19(b).) Winnebago County case No. 93—MR—131 involved the appeal of the Commission decision in 91—WC—58019. Claimant filed an application of claim in that case on November 6, 1991, alleging disk herniation and lumbar syndrome caused by repetitive trauma with a date of accident of December 8, 1989. The arbitrator awarded claimant TTD of $554.27 for $125^5/7$ weeks. On review of both decisions, the Commission affirmed and adopted the arbitrator's decision, noting that the decisions did not bar further hearings and decision under *Thomas v. Industrial Comm'n* (1980), 78 Ill. 2d 327, 399 N.E.2d 1322.

On appeal, respondent raises the following issues: (1) whether the Commission's finding that the accident arose out of and in the course of claimant's employment with respondent was against the manifest weight of the evidence; (2) whether the Commission's finding that the claimant's condition of ill-being was causally related to said accident was against the manifest weight of the evidence; (3) whether the arbitrator committed an abuse of discretion by sustaining an objection to Dr. Jeffrey Coe referring in his testimony to three charts prepared by Garth Hall, an engineer, showing the vibration of truck seats and by sustaining an objection to respondent's questioning of Coe, a specialist in occupational medicine, concerning the significance of vibration in relation to the human body; and (4) whether the Commission's award of TTD for the period of January 15, 1992, through October 14, 1992, was against the manifest weight of the evidence because claimant was working during that period of time. We affirm.

Briefly, claimant's theory of liability was that the autohauler driving environment in which respondent placed claimant caused claimant's condition. The facts necessary for an understanding of this court's decision will be summarized as relevant to the discussion of each issue.

■ The first issue concerns the arbitrator's evidentiary rulings. Two contentions are raised by respondent. One of these contentions is that claimant's objection on the ground of lack of foundation to respondent's question of Coe concerning the significance of vibration in relation to the human body should not have been sustained. However, respondent cites no authority in violation of Supreme Court Rule 341(e)(7) (145 Ill. 2d R. 341(e)(7)). This court declines to address respondent's argument for that reason alone. *Nielsen v. United Services Automobile Association* (1993), 244 Ill. App. 3d 658, 663, 612 N.E.2d 526, 529.

■ The arbitrator also sustained an objection of claimant to respondent's questions of Coe concerning charts made by Garth Hall and testified about by Hall. Coe, a practitioner in occupational medicine, had never examined claimant or any of the trucks driven by claimant. The objection to Coe's testimony with regard to these charts only related to two of the three charts. There was no objection to Coe testifying as to deposition exhibit No. 2, which compared the vibration frequency and vertical vibration of three different types of truck seats. When Coe was asked to relate the medical significance of the data shown on deposition exhibit No. 3 relating to fore and aft vibration of the Bostrom Fore & Aft Isolater, claimant objected because of lack of foundation and relevance. The objection was sustained. As to deposition exhibit No. 4, a chart comparing the typical ride of cars, four-wheel drive vehicles, trucks, and autohaulers, claimant objected again for lack of foundation because the testimony did not establish that Coe was the author of the document or was familiar with the data that went into the document. This was a continuing objection, and it was sustained.

Generally, Illinois rules of evidence govern proceedings before the Commission. (*Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 440, 559 N.E.2d 1034, 1036; 50 Ill. Adm. Code § 7030.70 (1991).) The evidentiary ruling of the arbitrator will only be overturned if it resulted from an abuse of discretion. (See *Coriell v. Industrial Comm'n* (1980), 83 Ill. 2d 105, 111, 413 N.E.2d 1279, 1281.) Likewise, whether an expert is qualified to testify about a particular subject is a matter to be decided by the trial judge, and that decision will be overturned only if it constitutes an abuse of discretion. *People v. Free* (1983), 94 Ill. 2d 378, 410, 447 N.E.2d 218, 233.

Although demonstrative evidence can make expert testimony more understandable, unlike the situation in *Burke v. Toledo, Peoria & Western R.R. Co.* (1986), 148 Ill. App. 3d 208, 213, 498 N.E.2d 682, 686, this case did not involve a jury and the charts were already before the arbitrator as a result of Hall's deposition. Furthermore, Coe was asked to interpret the charts without demonstrating that he had any knowledge of how the charts were created or where the information came from which appeared on the charts. In addition, Coe was not asked if these charts were the type of facts or data on which practitioners in occupational medicine rely in formulating opinions. We note particularly that the record does not disclose that respondent ever argued the merits of this issue before the arbitrator. Instead, the objection was made during Coe's evidence deposition, and the arbitrator ruled on the objection by marginal notation without benefit of arguments of counsel. Additionally, although the objection was made in an evidence deposition and respondent could not then know the arbitrator's ruling, no attempt was made by respondent to lay a better foundation or rephrase the questions. On the record before us, there is nothing to demonstrate an abuse of discretion on the part of the arbitrator in sustaining claimant's objections to Coe's testimony concerning the charts.

We next consider whether the Commission's finding that the accident arose out of and in the course of claimant's employment with respondent was against the manifest weight of the evidence and whether the Commission's finding that the claimant's condition of ill-being was causally related to said accident was against the manifest weight of the evidence. Respondent complains there is no single event or specific activity to which claimant can point as the onset of the condition and there is no expert evidence that vibration of an autohauler can or did cause claimant's condition. Respondent also argues that although driving the autohauler could have caused pain to claimant, that did not establish that the driving was the cause of the condition because the condition could have resulted from an aging or degenerative process.

The unrefuted testimony of claimant was that the pain he experienced in his back and legs first manifested itself in February 1988 while he was driving an autohauler for respondent. His job involved moving ramps to load cars, driving the cars, attaching a hook and chain to the cars, and ratcheting the car down to the springs. Depending upon the size of the car or the position he was in, he would work the steel bar for the ratchet with one hand or two. When the cars were on the upper rack, he stood underneath them and would ratchet with his arms over his head. He used his arms in-

terchangeably. He would then drive the truck loaded with cars to the appropriate destinations, unload the cars, and return to a terminal. Depending on the loads and destinations, such travel would entail 500 to 2,000 miles per week.

In the nearly 10 years he worked for respondent prior to February 1988, claimant drove several different autohaulers with different types of seats. He never had a brand new autohauler. Of the approximately 20 autohaulers he drove, only one may have had less than 100,000 miles on it. The seats were worn out. There were tears and rips in the seats. The seat springs were flattened out.

In most of the autohaulers he drove, a car was loaded over the top of the cab and he had to look out from underneath it in order to see stop lights on downgrades. On upgrades and downgrades, he leaned forward to observe traffic and road conditions because the cars on top of the head rack obscured his view. The car was extended four feet in front of the windshield. If the cars were backed all the way to the back tires, the length of the car between the rear bumper and the back tires stuck out even farther. These cars extended past the front of the tractor. If the car was tipped up, the car's bumper was about two feet off the hood of the tractor. In operating the autohauler, he was stooped over. The ride in the tractors was a very rough ride. He noticed he was "pushed over frontwards" and the ride was substantially rougher when the truck was empty compared to when it was loaded. There was a lumbar support in the upright portion of the seat. In the most recent tractor he drove, the lumbar support was pushing about six inches above his belt. He was being pushed out away from the seat because the support had been so high in the back. He adjusted the lumbar support in an attempt to find a comfortable ride, but none of the three positions of the support supported the lumbar area of his back.

As he drove the autohauler, he noticed vibrations. Vibrations came off the pedal to his foot, off the seat through his buttocks into his body, and off the shifter and steering wheel into his hands. He noticed a lot of slamming and bouncing down the road. He noticed more vibration as he drove on the highway at speeds of 50 or 55 miles per hour.

Claimant was off work from February 1988 to April 1989. After returning to work and being on the job for a month, he again began to experience pain in his back and legs. In December 1989, claimant was taken off work, and he has not returned to work.

Every doctor, physical therapist, and rehabilitation expert to which claimant was referred concluded that claimant could no longer drive a truck and he must find a different line of work. Dr. Charles

DeHaan, respondent's company doctor, who treated claimant in conjunction with Dr. Scott Nyquist, opined that claimant had a herniated disk and that driving for longer than one hour would aggravate claimant's problem. After taking a ride in a fully loaded autohauler, DeHaan stated that, if the driver had to sit in a forward flexed position to look out the windshield for a prolonged period of time, that would put a different stress to the neck and back than if he would sit upright. Over a period of time, this could manifest itself in a degenerative change of the lower lumbar spine, including at L4-L5. In some individuals, the stretching out of the lumbar spine and putting it in a forward flex position could aggravate the back condition. Regardless of the configuration, vibration would cause more stress than no vibration. DeHaan opined that the driving of the autohaulers was in part the cause of claimant's back condition. The activity of driving the autohauler did contribute to the cause of the condition of ill-being, according to DeHaan.

A nurse from respondent's rehabilitation company also referred claimant to Dr. David Shapiro, an orthopedic surgeon. Shapiro opined that claimant probably had a central disk rupture when he was driving and could not lift his leg. This occurred at L4-L5 and came about due to persistent vibration that claimant experienced in driving the autohauler. The cause of his ongoing symptoms was due to lumbar instability brought on by the incompetency of the disk due to the injury to that disk. According to Shapiro, degenerative disk disease could be caused by vibration. Due to the frequency and harmonics, the vibration sets up a degenerative process in the spine. Both Shapiro and DeHaan stated that, over time, the claimant's condition may resolve itself.

■ The claimant in a worker's compensation proceeding has the burden of proving by a preponderance of the credible evidence that the injury arose out of and in the course of employment, and that involves as an element a causal connection between the accident and the condition of claimant. (*Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 480, 548 N.E.2d 1033, 1038-39; *Horath v. Industrial Comm'n* (1983), 96 Ill. 2d 349, 356, 449 N.E.2d 1345, 1348.) An injury is considered "accidental" even though it develops gradually over a period of time as a result of repetitive trauma, without requiring complete dysfunction, if it is caused by the performance of claimant's job. (*Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524, 529-30, 505 N.E.2d 1026, 1028.) Plaintiff must meet the burden of proving that the injury was work related and not the result of normal degenerative aging processes. (*Belwood*, 115 Ill. 2d at 530, 505 N.E.2d at 1028.) The date of the accidental injury in a

repetitive trauma case is the date on which the fact of injury and a causal relationship between the injury and the employment would have become plainly apparent to a reasonable person. (*Belwood*, 115 Ill. 2d at 531, 505 N.E.2d at 1029.) In addition, aggravation or acceleration of a preexisting condition is recoverable unless the employee's health has deteriorated to the point that any normal daily activity is an overexertion or the activity engaged in presented no greater risks to the employee than those to which the general public is exposed. (*Caterpillar Tractor Co. v. Industrial Comm'n* (1982), 92 Ill. 2d 30, 36, 440 N.E.2d 861, 864.) An accident may be proved by circumstantial evidence alone. *Ervin v. Industrial Comm'n* (1936), 364 Ill. 56, 61-62, 4 N.E.2d 22, 25.

Whether the accident arose out of and in the course of claimant's employment with respondent are factual determinations of the Commission. (*Domagalski v. Industrial Comm'n* (1983), 97 Ill. 2d 228, 236, 454 N.E.2d 295, 298.) In determining whether the Commission's decision is against the manifest weight of the evidence, the reviewing court will assess whether there was sufficient factual evidence in the record to support the decision. *Benson v. Industrial Comm'n* (1982), 91 Ill. 2d 445, 450, 440 N.E.2d 90, 93.

> "The claimant's injury need not be the sole factor that aggravates a preexisting condition, so long as it is a factor that contributes to the disability. (*Azzarelli Construction Co. v. Industrial Com.* (1981), 84 Ill. 2d 262, 267; *Brooks v. Industrial Com.* (1979), 78 Ill. 2d 150, 155. See *General Electric Co. v. Industrial Com.* (1982), 89 Ill. 2d 432, 434.) In addition, the question of whether a claimant's disability is attributable to a degenerative condition or, because of an accident, to an aggravation of a preexisting condition, is a question of fact to be decided by the Industrial Commission. (*Caradco Window & Door v. Industrial Com.* (1981), 86 Ill. 2d 92, 99; *Azzarelli Construction Co. v. Industrial Com.* (1981), 84 Ill. 2d 262, 266; *Memorial Medical Center v. Industrial Com.* (1978), 72 Ill. 2d 275, 280-81, citing *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17-18.)" *Caterpillar*, 92 Ill. 2d at 36-37, 440 N.E.2d at 864.

●4 Just as the existence of accidental injury is a question of fact for the Commission where a preexisting condition is involved, so too is the question of whether there is a causal connection between the alleged accident and the current condition of ill-being. (See *Town of Cicero v. Industrial Comm'n* (1949), 404 Ill. 487, 490-93, 89 N.E.2d 354, 357-58.) The appropriate question is whether the evidence can support an inference that the accident aggravated the condition or accelerated the processes which led to the claimant's current condition of ill-being. (*Mason & Dixon Lines, Inc. v. Industrial*

*Comm'n* (1983), 99 Ill. 2d 174, 181-82, 457 N.E.2d 1222, 1226.) The Commission may find a causal relationship based on a medical expert's opinion that the injury "could have" or "might have" been caused by the accident. *Mason & Dixon Lines, Inc.*, 99 Ill. 2d at 182, 457 N.E.2d at 1226.

■ There is no specific testimony concerning any test results regarding the measurement of vibration in the particular trucks driven by claimant. However, the trucks were in respondent's control, not claimant's. Although respondent challenges the bases for De-Haan's and Shapiro's opinions of causality, that goes to the weight to be accorded their testimony, which was a question for the Commission to decide. Respondent does not raise a separate issue on appeal concerning any challenge to DeHaan's and Shapiro's qualifications to testify as experts. Nor does the fact that DeHaan and Shapiro conceded there may be other causes for the onset of a herniated disk render unbelievable their causation testimony, particularly as it relates to the driving of the autohauler aggravating claimant's condition.

Respondent questions the expertise of DeHaan and Shapiro regarding the effects of vibration on the human body. However, claimant's theory was not that vibration alone caused the injury, but that the entire autohauler environment caused the injury. Therefore, the opinions of Hall and Coe are not in direct conflict with the causation opinions of DeHaan and Shapiro.

While testifying to the vibration dampening effect of the Bostrom Air Ride Seat used in the autohaulers driven by claimant in 1988 and 1989, Hall noted that the seat did not dampen the vibration the driver experienced through the floorboard and steering wheel. Coe pointed out there was no clear correlation between a person's perception of vibration and the significance of the vibration in terms of amplitude or frequency. The duration was also a considerable variable. Yet, Coe conceded that drivers of autohaulers experience vertical movement, forward and backward movement, and side-to-side movement, and that they would be exposed to these motions at a higher dose than would someone who commuted to work every day. Coe also opined that a posterior subluxation of the L4 vertebrae over the L5 vertebrae could have a congenital cause or be caused by aging or trauma. Vibration could be a form of trauma depending on the amplitude, frequency, duration, and extent of transmittal of the physical forces to the individual in a given situation, according to Coe.

The Commission's findings that claimant proved an accident arising out of and in the course of his employment with respondent and

that there was a causal relationship between that accident and the claimant's condition of ill-being are not against the manifest weight of the evidence.

■ The final issue is whether the Commission's award of TTD for the period of January 15, 1992, through October 14, 1992, was against the manifest weight of the evidence because claimant was working during that period of time. The evidence was that during that period of time claimant had net earnings after taxes of $3,858.02 from an activity as a self-employed tool salesman. He eventually had to discontinue that activity because driving hurt his back and legs. During that time, he put 8,885 miles on his car. Claimant came to be self-employed because he could no longer drive an autohauler, he was unsuccessful at obtaining other employment, and respondent discontinued claimant's TTD because claimant was observed shoveling dirt in his backyard, an activity which was not inconsistent with claimant's work restrictions.

Merely because claimant could generate some income from this activity did not require the Commission to find that he was employable or could support himself by that activity. (*Archer Daniels Midland Co. v. Industrial Comm'n* (1990), 138 Ill. 2d 107, 121, 561 N.E.2d 623, 629.) The award of TTD was not against the manifest weight of the evidence.

Accordingly, the orders of the circuit court in Winnebago County case Nos. 93—MR—130 and 93—MR—131; confirming the decisions of the Commission in 91—WC—11512 and 91—WC—58019, are affirmed. The cause is remanded to the Commission for further proceedings pursuant to *Thomas* (78 Ill. 2d 327, 398 N.E.2d 1322).

Affirmed and remanded.

EGAN, WOODWARD, SLATER, and RARICK, JJ., concur.