PRAIRIE FARMS DAIRY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Edward J. Kossman, Appellee).

Fifth District    No. 5—95—0455WC

Opinion filed May 3, 1996.

Robert W. Butler, of Calvo & Mateyka, of Granite City, for appellant.

James R. Carey, of Pratt, Bradford & Tobin, P.C., of East Alton, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Claimant, Edward J. Kossman, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq.* (West 1994)) for injuries to his back that he allegedly sustained on November 10, 1981, while working for Prairie Farms Dairy (employer). Following hearing on claimant's section 19(b) petition, arbitrator Boyd found that claimant had sustained an injury to his back that arose out of and in the course of his employment and awarded him 24 weeks' temporary total disability (TTD) in the amount of $231.09 per week and $5,000 in necessary medical expenses. The Industrial Commission (the Commission) affirmed and remanded to the arbitrator for proceedings pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327 (1980).

On remand in August 1990, arbitrator Douglas found that claimant's additional multiple medical conditions, such as his diabetes, hypertension, peripheral neuropathy, cholecystitis, residual effects of a stroke, degenerative osteoarthritis, degenerative disc disease, and left-sided spastic hemiplegia, were not related to the accident of November 10, 1981, based on the numerous medical records introduced and the report of Dr. Holder. The arbitrator further stated, "The considerable part of the medical points to unnecessary surgery for conditions of ill-being that were not related to one isolated traumatic event [accident of November 10, 1981]." Nonetheless, he found an aggravation of a preexisting condition and awarded claimant 24 weeks' TTD, $5,000 in medical benefits, and 15% disability of

the person as a whole. The Commission again affirmed on May 8, 1991. On administrative review, the circuit court of Madison County, Judge Meehan presiding, reversed, finding the Commission's decision to be against the manifest weight of the evidence. The court stated, relying on *Edgcomb v. Industrial Comm'n*, 181 Ill. App. 3d 398 (1989):

> "In *Edgcomb vs. Industrial Commission*, 181 Ill. App. 3d 398, 536 N.E.2d 1364 (1989) the Appellate Court ruled that the treating surgeon's opinions ought to be given greater weight than the conclusions of examining doctors. As in *Edgcomb*, the treating doctor's findings were obtained from extensive examinations, objective tests and an *internal* inspection of petitioner's low back. [Citation.] It was error for the Industrial Commission to disregard Dr. Jacobs' testimony in favor of the cursory conclusions of the respondent's examining doctors." (Emphasis in original.)

On remand, the Commission relied entirely upon Dr. Jacobs and found that claimant was permanently and totally disabled and awarded him medical benefits in full. The circuit court of Madison County, Judge Herndon presiding, confirmed. Employer appeals, contending that Judge Meehan erred in holding that the Commission's award of 15% of the person as a whole was against the manifest weight of the evidence. For the reasons that follow, we agree.

Claimant alleges he suffered a back injury on November 10, 1981, after he slipped and fell. According to claimant, at the end of his workday he was washing his delivery truck and slipped on a soapy deck. He fell out of the truck's back door, striking his back on the bumper, his chest on the door, and his knee on the ground. Claimant had sustained a previous back injury, and he underwent surgery in 1978 by Dr. Jacobs. Claimant stated that between the 1978 surgery and the 1981 fall, he had no problems with his back.

Claimant first sought treatment in January 1982. He missed 24 weeks of work and then returned. In June, Dr. Jacobs admitted claimant to the hospital for testing. A myelogram revealed defects at L3-L4, L4-L5, and L5-S1. The defect at L5-S1 was new, according to Dr. Jacobs, while the other two defects were preexisting conditions. An EMG revealed lower motor neuron involvement of all leg muscles. The discharge summary contained the following diagnoses: herniated nuclear pulp at L3-L4; diabetes mellitus; peripheral neuropathy; weight loss; and lumbar spondylosis.

Dr. Hardin performed an extensive work-up on claimant on June 8, 1982, at the request of Dr. Jacobs. Dr. Hardin found evidence of peripheral neuropathy, particularly in the lower extremities, which he attributed partially to the diabetes and partially to the herniated nucleus pulposus at L3-L4. Dr. Hardin's impressions following the

work-up were peripheral neuritis, peripheral neuropathy secondary to diabetes, old scarring and disc disease with nerve root compressed L4 and S1 on the right, degenerative arthritis of the thoracic and lumbar spine with spondylosis, and depression.

Claimant underwent a second myelogram in September 1982 under the direction of Dr. Hardin. This test showed that claimant's cervical and thoracic spines were normal. The lumbar spine showed extra dural defects at L1-L2, L3-L4, and mild reverse spondylolisthesis of L4 and L5. Upon discharge, Dr. Hardin diagnosed claimant with diabetic peripheral neuropathy and status post-lumbar laminectomy in 1978. Claimant continued working until March 24, 1984, when he had another accident in which he injured his ribs. He returned to work on May 7, 1984.

On April 7, 1985, claimant was admitted to the hospital for gall bladder surgery. He was diagnosed at this time with diabetes. He suffered a stroke on April 15 and underwent rehabilitation for approximately one year.

In a report dated September 24, 1985, Dr. Jacobs states: "[Claimant] did well with some intermittent back pain [following the surgery in 1978], but generally worked, and was symptom free with conservative management until June, 1982 when he had another myelogram, but no surgery."

In November of 1985, claimant was admitted to the hospital to undergo testing, including a myelogram. Diagnoses upon discharge were: displacement disc lumbar L4-L5 left and L4-L5 and S1 midline; spondylosis lumbar; spinal stenosis lumbar L3, L4, L5, and S1; arachnoiditis; hemiparesis, left poststroke; right middle cerebral artery branch occlusion; hypertension; and diabetes mellitus. Surgery to decompress at L3-L4 was discussed, but claimant decided to try physical therapy first. During this admission, claimant was twice examined by a consulting physician, Dr. Holder, at the request of Dr. Jacobs. Dr. Holder's report states that claimant suffers from multiple medical problems, including degenerative osteoarthritis of a severe and diffuse nature throughout the entire lumbar spine. In addition, he has severe degenerative disc disease with almost complete disc narrowing at the L4-L5 and L5-S1 spaces. A large osteophyte was found at L3. Dr. Holder did not believe that claimant was a candidate for chemonucleosis due to his numerous problems, stroke, and two previous surgeries.

Claimant underwent a laminectomy on June 2, 1986, which was performed by Dr. Jacobs. It involved L4-L5 and L3-L4 on the left. Dr. Jacobs attributed claimant's problems and the need for this surgery to the accident in 1981.

Claimant was examined by Dr. Horenstein at employer's request on August 7, 1987. Dr. Horenstein opined that claimant's symptoms had nothing to do with his accident in 1981 and the surgery was not necessary to cure any effects of that injury. He further opined that claimant was totally disabled, but due to the stroke and not the accident in 1981.

The sole issue on appeal is whether the circuit court erred in finding that the Commission erred in disregarding the opinion of claimant's treating physician based on *Edgcomb v. Industrial Comm'n*, 181 Ill. App. 3d 398 (1989).[1] For the reasons that follow, we reverse.

In *Edgcomb*, the Commission found no causal connection between claimant's accident and her surgery, basing its decision largely on the report of Dr. Weinger, an examining physician, and rejected the opinion of claimant's treating physician, Dr. Holden, because he failed to perform any tests prior to performing surgery. The circuit court confirmed. We reversed, finding that the Commission's decision was against the manifest weight of the evidence. We held that it was error to rely so heavily on Dr. Weinger's opinion. First, he examined claimant only cursorily for seven minutes. Second, he failed to perform any testing. The court stated, "The Commission evidently considered Dr. Holden deficient for failing to perform these various tests, but, contradictorily, paid no attention to Dr. Weinger's failure to perform said tests." *Edgcomb*, 181 Ill. App. 3d at 404. In sum, we stated, "On balance, we find the evidence obtained from Drs. Holden, Cassidy, and Sureka, gleaned from extensive examination of and contact with claimant, clearly outweighs that of Dr. Weinger." *Edgcomb*, 181 Ill. App. 3d at 405.

Our research has not revealed any case where this court, or the Illinois Supreme Court, has said that, as a matter of law, the Commission *must* give more weight to a treating physician's testimony than to that of an examining physician. Certainly *Edgcomb* does not state that. In *Edgcomb*, we simply found that a balance of all the evidence, including that of Dr. Holden, which the Commission disregarded, supported a finding of causal connection. Although we have said numerous times that the Commission *may* give more weight to a treating physician's opinion, we have never stated that it is obli-

---

[1] We note that claimant frames the issue as "whether the Commission's Decision[,] affirming the 1993 Circuit Court Decision, is against the manifest weight of the evidence." This is incorrect. We must address the first circuit court decision to ascertain whether that decision is correct before we even get to the second circuit court decision.

gated to. See *O'Neal Brothers Construction Co. v. Industrial Comm'n*, 93 Ill. 2d 30, 38 (1982) (Commission may give weight to treating physician or opinion rendered based on hypothetical question); *International Vermiculite Co. v. Industrial Comm'n*, 77 Ill. 2d 1, 4 (1979) (Commission may attach greater weight to treating physician's testimony); *Holiday Inns of America v. Industrial Comm'n*, 43 Ill. 2d 88, 89-90 (1969) (Commission may properly attach more weight to treating physician's evidence); *Proctor Community Hospital v. Industrial Comm'n*, 41 Ill. 2d 537, 541 (1969) (same); *Williams v. Industrial Comm'n*, 244 Ill. App. 3d 204, 210 (1993) (Commission to decide which medical view to be accepted and "it *may* attach greater weight to the opinion of the treating physician" (emphasis added)); *Lock 26 Constructors v. Industrial Comm'n*, 243 Ill. App. 3d 882, 888 (1993) (Commission's decision to rely on treating physician's testimony was not against manifest weight of the evidence); *ARA Services, Inc. v. Industrial Comm'n*, 226 Ill. App. 3d 225, 232 (1992) (may attach more weight to treating physician); *Freeman United Coal Mining Co. v. Industrial Comm'n*, 224 Ill. App. 3d 778, 790 (1992) (Commission could rely on opinions of treating physicians); *Christman v. Industrial Comm'n*, 180 Ill. App. 3d 876, 882 (1989) (Commission entitled to rely on conclusions of treating physician over conclusions of examining physician); *International Harvester Co. v. Industrial Comm'n*, 169 Ill. App. 3d 809, 815 (1988) (Commission could rely on examining physician's testimony over testimony of two other physicians); accord *Dornblaser v. Industrial Comm'n*, 349 Ill. 61, 68-70 (1932); *Western Electric Co. v. Industrial Comm'n*, 349 Ill. 139, 145-46 (1932). Claimant has not cited to any case to support the circuit court's decision, other than *Edgcomb*.

■ Awards resulting from the Commission's reliance on the testimony of an examining physician over that of a treating physician have been affirmed. See, *e.g., Hartsfield v. Industrial Comm'n*, 241 Ill. App. 3d 1055, 1061 (1993); *Presson v. Industrial Comm'n*, 200 Ill. App. 3d 876, 881 (1990). The law is clear; it is the Commission's province to determine what weight to give testimony and to resolve any conflicts in testimony. This includes medical testimony and evidence. *Freeman United Coal Mining Co. v. Industrial Comm'n*, 263 Ill. App. 3d 478, 485 (1994); *Lo Russo v. Industrial Comm'n*, 258 Ill. App. 3d 59, 71 (1994). We will not substitute our judgment for that of the Commission, nor should the circuit court.

In *Edgcomb*, we found that the trial court's decision was against the manifest weight of the evidence because the examining doctor, whom the Commission and the trial court relied on, met with claimant for only seven minutes. In addition, that doctor performed no

tests. Conversely, the other doctors whose medical evidence was entered into the record had extensively examined claimant, and many had performed objective tests. We concluded that, based on the balance of that evidence, reliance on the examining physician's testimony alone was against the manifest weight of the evidence.

■ In this case, however, the facts and evidence presented are different. Here, the Commission relied on Dr. Holder. It is true that Dr. Holder was not, strictly speaking, claimant's treating physician. Dr. Jacobs, claimant's treating physician, requested that Dr. Holder evaluate claimant. In evaluating claimant, Dr. Holder took a history from claimant and performed as many tests as he could. His records indicate that some testing was impossible due to claimant's paralysis and the residual effects of his stroke. In addition, he evaluated the laboratory tests conducted on claimant, including a bone scan, a CT scan, and a myelogram. There was additional medical evidence in the record as well. Dr. Jacobs throughout 1982 ordered various evaluations of claimant because he could not ascertain the cause of claimant's complaints. Dr. Pierce, who examined claimant in 1982, and Dr. Horenstein, who examined claimant in 1987, both found that claimant's conditions were not related to the accident in 1981. Thus, based on the balance of the medical evidence, the court's reliance on Dr. Holder's opinion was not against the manifest weight of the evidence. In sum, in *Edgcomb* the opposite result was clearly apparent from the evidence present in the record; however, in the instant case, an opposite result is not clearly apparent from the balance of the medical evidence.

There is ample evidence in the record to support the Commission's decision. Claimant returned to work after the 1981 accident and worked regularly until he sustained another injury in 1984. During this time, he underwent minimal medical attention. He then returned to work for another year. Claimant suffered a stroke in 1985, which resulted in additional medical problems. He underwent rehabilitation and at the time of the arbitration continued to walk with a cane. There was no evidence presented that claimant was required to walk with a cane prior to the stroke.

Although Dr. Jacobs stated there was a causal connection between claimant's condition and his accident in 1981, Dr. Horenstein stated to the contrary. After taking an extensive history from claimant and performing an examination, Dr. Horenstein opined that claimant's condition had nothing to do with the accident but, instead, claimant's problems were due to his stroke. Dr. Horenstein testified that claimant made a good recovery after the 1981 accident and worked for another $3^{1}/_{2}$ to 4 years. This is supported by Dr. Jacobs'

notes, which state that claimant worked after the accident and "was symptom free with conservative management until June 1982." All medical records demonstrate that claimant suffered from various degenerative conditions.

Additionally, Dr. Holder, who was consulted by Dr. Jacobs concerning treatment options for claimant's back condition, stated that claimant was not a candidate for chemonucleosis because of his previous back surgery, degenerative osteoarthritis, spinal stenosis, poorly controlled diabetic condition, left hemiparesis, and the stroke, which resulted in severe neurological injuries. Chemonucleosis is "[t]he enzymatic dissolution of the nucleus pulposus by injection of chymopapain [a chemical enzyme]." Stedman's Medical Dictionary 261 (24th ed. 1982). The nature of this treatment option is far less severe than invasive surgery; yet, Dr. Jacobs performed surgery. Based on the evidence before the Commission, we cannot say that a contrary decision is clearly apparent.

For the foregoing reasons, the decision of the circuit court of Madison County is reversed, and the Commission's award of May 8, 1991, is reinstated.

Judgment reversed; award reinstated.

McCULLOUGH, P.J., and COLWELL, HOLDRIDGE, and RARICK, JJ., concur.