GILSTER MARY LEE CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Ella Joan Wydeck, Appellee).

Fifth District (Industrial Commission Division)   No. 5—00—0659WC

Opinion filed November 21, 2001.

Gary B. Nelson, of Feirich/Mager/Green/Ryan, of Carbondale, for appellant.

Nathaniel D. Mudd, of Brown & Associates, of Belleville, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent employer, Gilster Mary Lee Corp., appeals from the September 21, 2000, order of the circuit court of Randolph County confirming a December 7, 1999, decision of the Illinois Industrial Commission (Commission) entered following remand by the circuit

court. On remand, the Commission awarded claimant Ella Joan Wydeck $189.34 per week for 64$^{1}$/7 weeks for temporary total disability and $170.40 per week for 40 weeks for the permanent partial disability to the extent of 20% loss of use of the left leg. 820 ILCS 305/8(b), (e) (West 2000). Previously, on February 24, 1999, the circuit court reversed the original Commission decision entered on May 6, 1998, that had affirmed and adopted the decision of the arbitrator finding that claimant failed to prove that (1) her knee injury was work-related instead of the result of a normal degenerative aging process and (2) her current condition of ill-being was causally related to her employment.

The sole issue on appeal is whether the Commission's original finding that claimant had failed to prove an accidental injury arising out of her employment was against the manifest weight of the evidence. We vacate the circuit court's orders of September 21, 2000, and February 24, 1999, and the Commission's decision on remand entered December 7, 1999, and reinstate the original Commission decision entered May 6, 1998.

On May 30, 1991, claimant filed an application for adjustment of claim alleging a repetitive trauma injury to her right and left knees with a date of last exposure of June 2, 1988. She began her employment with respondent in 1979. On June 2, 1988, she began having trouble with her knees. She denied having any specific instance of trauma such as falling down, bumping, or hitting her knee. Claimant testified that she was a hand packer on the food production line. She reviewed respondent's videotape of a production line at the respondent's manufacturing plant. She admitted that this videotape depicted a production line similar to the one she worked on, with the exception that the line she worked on required the employee to go underneath a "cartoner" apparatus in order to reach her workstation as a packer. Claimant testified that she would have to crawl or stoop to enter and exit her workstation some five times during the workday: upon arrival in the morning, during her morning break, during her lunch hour break, during the afternoon break, and at quitting time at the end of her shift. In addition, if the production line broke down throughout the course of the shift, she would then exit her workstation to retrieve packing materials. She admitted that on some occasions, this occurred frequently, but on other days it would occur infrequently or not at all. She admitted that the stoppages of the production line were varied in nature. Occasionally, she would be called in on Saturdays to work a cleaning shift. That work involved climbing on ladders, cleaning machines with air hoses, and scrubbing floors with mops. She said that she would also have to clean metal walkways by getting down on

her hands and knees if material was packed into the walkway. Prior to June of 1988, she never had any problem with either knee.

However, as to prior problems, the medical records of Dr. David Vidal included office visit notes revealing that claimant reported an injury to her left leg when she fell off the porch on April 13, 1970. There was an X-ray report of the left knee as well. In addition, there were numerous office visit notes in 1978 indicating problems with the right knee. There are other references in the notes in 1985 of problems with the right knee.

Randy Sherman, a supervisor in the same plant in which claimant worked, testified he had worked in various other positions with claimant, some of which required that he actually perform the same job as packer that claimant performed. Sherman testified that the videotape fairly and accurately depicted the same type of production line that the claimant worked on. The particular line that claimant worked on was no longer in existence. He noted a difference in the packing job depicted on the videotape in that the production line that claimant worked on for a portion of her employment at respondent did require her to squat or crawl under the machinery to reach her workstation. Sherman testified that on average, in his opinion, the claimant would be required to squat or stoop under the machinery to enter or exit her workstation approximately one time per hour. This estimate took into consideration the periodic stoppages of the production line. With regard to cleaning, Sherman testified that the Saturday cleaning shifts were rotated and that the frequency with which employees were required to work that shift varied. There may have been periods where they worked for several weeks in a row on the Saturday cleaning shifts, and there may have been weeks or months when they did not work at all on the cleaning shift.

Dr. Forbes McMullin, who saw claimant one time and examined claimant at the request of her attorney, testified that the claimant's employment aggravated her clearly preexisting degenerative arthritic changes in her knees. He based his opinion on the claimant's history of activity such as squatting, kneeling, and crawling to get beneath the machinery. McMullin admitted that the claimant's level of obesity would be a factor that would increase the pressure on her knee joints. McMullin testified that any isolated event of bending over and crawling would be sufficient to aggravate her condition. McMullin testified that all of the factors such as claimant's weight and employment activities could be factors in aggravating her condition. McMullin did not testify to any threshold level of bending, crawling, or squatting that would be sufficient to constitute an aggravation of her degenerative arthritic condition. Each isolated event was a causative factor in the opinion of McMullin.

Respondent submitted the deposition transcript of Dr. William Costen, who testified that there was no history of injury or specific stress that would cause an aggravation of her condition. Costen testified that the claimant was simply stressing her knee with every step that she took, whether she was at home or at work, and that it did not make any difference where she was. He said she simply had deterioration of a joint with weight bearing. Costen reviewed the job description and testified that it did not indicate claimant had to squat frequently. Costen also testified that he viewed the videotape, and it did not appear that the claimant was exposed to anything more than just normal activities of daily living. Costen felt that the claimant's condition, as found in the July 15, 1988, operative notes of Dr. Neill Valdes following surgery to claimant's left knee, was perfectly compatible with an overweight individual whose joint surfaces were beginning to wear out. Costen testified that the claimant's weight and height, as reflected in Vidal's office visit note of March 23, 1988, were 5 feet 3 inches in height and 192 pounds in weight. The arbitrator, in his decision, referred to Costen's testimony that claimant "was simply stressing her knee with every step that she took, whether she was at home or at work and that it didn't make any difference where she was."

The arbitrator reviewed the videotape and found that it depicted a production line, as testified to by the witnesses, at respondent's plant. It appeared to the arbitrator that the primary function of the packers shown on the tape was to stand at the workstations and place pouches in boxes as they moved down the line. There was almost no bending at the knees depicted, nor was there any squatting or stooping involved in the actual process of packing boxes. The arbitrator noted that the claimant's testimony was not inconsistent with Sherman's testimony that she would stoop or squat "perhaps one time an hour." The arbitrator found that the frequency of the exiting and entering was minimal on some occasions and greater on others.

The arbitrator concluded that the claimant failed to meet her burden of proving that her injury was work-related and not the result of a normal degenerative aging process and claimant had not established that her squatting and stooping activities rose to the level of repetitive activity sufficient to constitute an accident within the meaning of the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1998)). It was the arbitrator's conclusion that this level of activity did not expose the claimant to any additional risk beyond that to which she would otherwise be exposed in her average daily living, and the arbitrator found that claimant's condition of ill-being was not causally connected to her employment activities but, rather, was the

result of her obesity and the natural degenerative process of aging. The arbitrator denied compensation.

As previously noted, the Commission affirmed and adopted these findings of the arbitrator in its May 6, 1998, decision. A review of the circuit court's February 24, 1999, order discloses that the circuit court simply reweighed the evidence.

As shown in *Freeman United Coal Mining Co. v. Industrial Comm'n*, 188 Ill. 2d 243, 720 N.E.2d 1063 (1999), before giving deference to the Commission decision following remand, the reviewing court initially determines whether the circuit court's finding that the original Commission decision was contrary to law was correct. In the case at bar, the circuit court did not correctly determine that the Commission applied an improper legal standard. Different reasonable inferences could have been drawn from the undisputed facts. When different reasonable inferences can be drawn from the undisputed facts, the standard of review is whether the Commission's findings of fact are against the manifest weight of the evidence. *Sorenson v. Industrial Comm'n*, 281 Ill. App. 3d 373, 381, 666 N.E.2d 713, 718 (1996). The circuit court improperly reviewed the original Commission decision *de novo* instead of determining whether the findings of the Commission were against the manifest weight of the evidence.

When an original decision of the Commission is reversed because it is against the manifest weight of the evidence and a new decision is entered on remand, this court initially considers the propriety of the original Commission decision before reviewing the Commission decision entered following remand. *F&B Manufacturing Co. v. Industrial Comm'n*, 325 Ill. App. 3d 527, 531 (2001). Here, we first consider the propriety of the original Commission decision.

The Commission's original decision based its denial of benefits on the determinations that the evidence failed to establish that (1) claimant suffered an accidental injury arising out of and in the course of her employment with respondent and (2) her current condition of illbeing was causally related to her employment with respondent. No issue is raised in this appeal concerning the Commission's finding that the evidence did not establish that claimant's current condition of illbeing was causally related to her employment.

Claimant has the burden of proving, by a preponderance of the credible evidence, that the alleged injury arose out of and in the course of her employment with respondent. Claimant must prove that the injury was work-related and not the result of normal degenerative aging processes. *Cassens Transport Co. v. Industrial Comm'n*, 262 Ill. App. 3d 324, 330-31, 633 N.E.2d 1344, 1348-49 (1994).

Aggravation or acceleration of a preexisting condition is com-

pensable unless the claimant's health had deteriorated to the point that any normal daily activity is an overexertion or the employment activity engaged in presented no greater risks to the claimant than those to which the general public is exposed. *Caterpillar Tractor Co. v. Industrial Comm'n*, 92 Ill. 2d 30, 36, 440 N.E.2d 861, 864 (1982); *Cassens Transport Co.*, 262 Ill. App. 3d at 331, 633 N.E.2d at 1349.

■ Whether the accidental injury arose out of claimant's employment with respondent is a factual determination for the Commission. *Cassens Transport Co.*, 262 Ill. App. 3d at 331, 633 N.E.2d at 1349. In determining whether a finding of fact of the Commission is against the manifest weight of the evidence, "[t]he test is not whether this or any other tribunal might reach the opposite conclusion, but whether there was sufficient factual evidence in the record to support the Commission's determination." *Beattie v. Industrial Comm'n*, 276 Ill. App. 3d 446, 450, 657 N.E.2d 1196, 1199 (1995). The determinations of the credibility of the witnesses and the weight to be accorded the evidence are the province of the Commission. *Dillon v. Industrial Comm'n*, 195 Ill. App. 3d 599, 607, 552 N.E.2d 1082, 1087 (1990). This is particularly true in regard to medical testimony. *Dexheimer v. Industrial Comm'n*, 202 Ill. App. 3d 437, 442-43, 559 N.E.2d 1034, 1037 (1990).

The arbitrator stated the following:

> "Petitioner has not established that her squatting and stooping activities rise to the level of repetitive activities sufficient to constitute an accident within the meaning of the Act. Petitioner testified on some occasions that she was required to do more squatting and stooping than others. Her testimony was not inconsistent with that of Randy Sherman[ ][,] who opined that on average she would be required to squat or stoop perhaps one time per hour. It is the arbitrator's conclusion that this level of activity does not expose the petitioner to any additional risk beyond that to which she would otherwise be exposed in her average daily living. The petitioner's condition of ill-being is not causally connected to her employment activities[ ] but rather is the result of her obesity and the natural degenerative process of aging."

The Commission, in adopting the arbitrator's decision, found that the stooping, bending, kneeling, and crawling that claimant was required to do to enter and exit her workstation did not expose her to a risk "beyond that to which she would be exposed in her average daily living."

■ If an employee is injured as a result of a hazard to which the employee would have been equally exposed apart from employment, the injury is not compensable. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 59, 541 N.E.2d 665, 667 (1989). If the em-

ployee is exposed to a risk to a greater degree than is the general public, the injury will be considered to have arisen out of the employment. *O'Fallon School District No. 90 v. Industrial Comm'n*, 313 Ill. App. 3d 413, 416, 729 N.E.2d 523, 525-26 (2000).

■ In its March 4, 1999, order, reversing the Commission, the circuit court apparently concluded that the testimony of Dr. McMullin was more credible than the testimony of Dr. Costen. Each of these doctors only saw claimant on one occasion. Although Dr. McMullin recommended that claimant return to him within a month for reevaluation, she did not. When the credibility of witnesses is a determining issue, a question of fact remains and *de novo* review is inappropriate.

The resolution of the credibility of witnesses, including medical testimony, is solely the province of the Commission. *Fickas v. Industrial Comm'n*, 308 Ill. App. 3d 1037, 1041, 721 N.E.2d 1165, 1169 (2000). In *Prairie Farms Dairy v. Industrial Comm'n*, 279 Ill. App. 3d 546, 551, 664 N.E.2d 1150, 1153 (1996), this court admonished the circuit court not to substitute its judgment for that of the Commission.

We vacate the orders of the circuit court of Randolph County entered February 24, 1999, and September 21, 2000, and the Commission decision entered on remand on December 7, 1999, and we reinstate the Commission's original decision entered May 6, 1998.

Circuit court orders vacated; Commission decision on remand vacated; original Commission decision reinstated.

HOFFMAN, O'MALLEY, HOLDRIDGE, and RARICK, JJ., concur.